IN THE SUPREME COURT OF NORTH CAROLINA

No. 183A14

11 June 2015

STATE OF NORTH CAROLINA

v.

TIYOUN JIMEK JACKSON

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 758 S.E.2d 39 (2014), reversing an order entered on 10 January 2013 by Judge Christopher W. Bragg and vacating a judgment entered on 7 January 2013 by Judge A. Robinson Hassell, both in Superior Court, Guilford County. Heard in the Supreme Court on 19 March 2015.

*Roy Cooper, Attorney General, by Derrick C. Mertz, Assistant Attorney General, for the State-appellant.*

*Staples S. Hughes, Appellate Defender, by Constance E. Widenhouse, Assistant Appellate Defender, for defendant-appellee.*

HUDSON, Justice.

Defendant Tiyoun Jimek Jackson was stopped and searched on 9 April 2012 by Officer Timothy Brown of the Greensboro Police Department outside a shop known for drug activity. Based on evidence obtained as a result of this stop, defendant was indicted for possession of a firearm by a felon, possession of a firearm with an altered serial number, and conspiracy to possess with intent to sell or deliver marijuana.

Defendant moved to suppress the evidence obtained as a result of the initial stop on the basis that Officer Brown lacked reasonable suspicion to conduct an investigatory stop of defendant. The trial court denied this motion and the Court of Appeals reversed. Because we conclude that the trial court's unchallenged findings of fact establish that Officer Brown possessed reasonable suspicion to stop defendant, we now reverse the decision of the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

On the evening of 9 April 2012, Officer Timothy Brown was assigned to patrol the area of Greensboro surrounding Kim's Mart, a shop known to police, including Officer Brown personally, as the site of frequent hand-to-hand drug transactions. At approximately 9:00 p.m., as Officer Brown approached the store in his marked patrol vehicle, he witnessed defendant standing near the store's newspaper dispenser with another individual named Curtis Benton. Upon seeing the police vehicle, defendant and Benton dispersed, with defendant walking east into Kim's Mart and Benton walking in the opposite direction to the west.

Officer Brown continued down the road past Kim's Mart, made a U-turn, and started back toward Kim's Mart. As he approached the store a second time, he saw that defendant and Benton had returned and were again standing in front of Kim's Mart, approximately twenty feet from where Officer Brown first saw them. For a second time, defendant and Benton separated and began walking away from each other in opposite directions. As defendant walked by Officer Brown's patrol car,

Officer Brown stopped defendant to ask him about drug activity; he then told defendant to place his hands on the car so he could frisk defendant for weapons. Officer Brown then asked defendant for consent to search his person, and defendant agreed. As Officer Brown was patting down defendant, defendant placed a loaded handgun on the hood of the patrol car and told Brown that he had found the weapon in the woods two weeks earlier. Officer Brown placed defendant under arrest and handcuffed him. A separate search of Benton yielded marijuana packaged in a number of small plastic bags.

Based on the evidence obtained from the stops of defendant and Benton, including the handgun seized from defendant and the marijuana and plastic bags seized from Benton, defendant was indicted on 11 June 2012 for possession of a firearm by a felon, possession of a firearm with an altered serial number, and conspiracy to possess with intent to sell or deliver marijuana. Defendant moved to suppress the evidence obtained as a result of the original seizure on the basis that Officer Brown lacked reasonable suspicion to conduct an investigatory stop of defendant. The trial court denied this motion in an order dated 5 December 2012. On 7 January 2013, defendant pleaded guilty to the offenses for which he was indicted while reserving his right to appeal the denial of his motion to suppress. In a divided opinion, the Court of Appeals reversed the trial court, holding that the facts and circumstances did not establish reasonable suspicion for Officer Brown to conduct an

investigatory stop of defendant. *State v. Jackson*, ___ N.C. App. ___, ___, 758 S.E.2d 39, 46 (2014). The State appealed to this Court as a matter of right.

## ANALYSIS

The sole issue presented in this appeal is whether the unchallenged facts found by the trial court sufficiently establish reasonable suspicion for the initial investigatory stop of defendant. Because we conclude that they do, we reverse the decision of the Court of Appeals.

As a general matter, "[b]oth the United States and North Carolina Constitutions protect against unreasonable searches and seizures." *State v. Otto*, 366 N.C. 134, 136, 726 S.E.2d 824, 827 (2012) (citing U.S. Const. amend. IV and N.C. Const. art. I, § 20). However, the United States Supreme Court has long held that the Fourth Amendment permits a police officer to conduct a brief investigatory stop of an individual based on reasonable suspicion that the individual is engaged in criminal activity. *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 1884-85 (1968). As that Court has recently described, reasonable suspicion requires specific, articulable facts indicating present, ongoing criminal activity and will not allow a stop based on a mere inchoate suspicion or "hunch":

> The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity. The reasonable suspicion necessary to justify such a stop is dependent upon both the content of information possessed by [the officer] and its degree of reliability. The standard

takes into account the totality of the circumstances—the whole picture. Although a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.

*Navarette v. California*, ___ U.S. ___, ___, 134 S. Ct. 1683, 1687 (2014) (citations and internal quotation marks omitted). This same standard—reasonable suspicion— applies under the North Carolina Constitution. *See, e.g.*, *Otto*, 366 N.C. at 136-37, 726 S.E.2d at 827 (noting that traffic stops, as a type of brief investigatory seizure, are analyzed under the North Carolina Constitution using the reasonable suspicion standard). Therefore, when a criminal defendant files a motion to suppress challenging an initial investigatory stop, the trial court can deny that motion only if it concludes, after considering the totality of the circumstances known to the officer, that the officer possessed reasonable suspicion to justify the challenged stop.

When a motion to suppress is denied, this Court employs a two-part standard of review on appeal: " 'The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law.' " *Id.* at 136, 726 S.E.2d at 827 (quoting *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011)). At the Court of Appeals, defendant challenged only finding of fact number five on the basis that it was not supported by competent evidence. The Court of Appeals agreed that finding number five was unsupported, and the State does not challenge that

determination here. Therefore, we review de novo whether the unchallenged findings of fact are sufficient to establish that Officer Brown had reasonable suspicion to conduct a brief investigatory stop of defendant.

After holding a hearing regarding defendant's motion to suppress, the trial court entered a written order, dated 5 December 2012, which included the following relevant findings of fact:

> 1. Timothy D. Brown is and has been an officer for the Greensboro Police Department since August 15, 2009.
>
> 2. Officer Brown based on training and experience is familiar with marijuana and other narcotic drugs.
>
>    . . . .
>
> 4. Prior to April 9, 2012, Officer Brown had on two occasions contact with the defendant, Tiyoun Jimek Jackson.
>
>    . . . .
>
> 11. On April 9, 2012, Officer Brown was assigned and was patrolling zone 450 in a marked patrol car.
>
> 12. Officer Brown at approximately 9:00 pm was patrolling in the vicinity of Kim's Mart located at 2200 Phillips Avenue.
>
> 13. Based on Officer Brown's experience as a Greensboro Police Officer he knows that the immediate area outside of Kim's Mart has been the location of hundreds of narcotic

investigations some resulting in arrests.

14. Officer Brown has personally made drug arrests in the immediate area of Kim's Mart.

15. Officer Brown is personally aware that hand-to-hand drug transactions have taken place on the sidewalk and street directly adjacent to Kim's Mart as well as inside Kim's Mart.

16. At approximately 9:00 pm on April 9, 2012 Officer Brown saw the defendant . . . and Curtis M. Benton standing near the newspaper dispenser outside of Kim's Mart.

. . . .

19. The defendant . . . and Curtis M. Benton upon spotting Officer Brown in his marked patrol car stopped talking and dispersed.

20. The defendant . . . went to the East and walked into Kim's Mart and Curtis M. Benton walked away, in the opposite direction, to the West.

21. Officer Brown testified that his training and experience indicate that upon the approach of a law enforcement officer, two individuals engaged in a drug transaction will separate and walk away in opposite directions.

22. Officer Brown continued past Kim's Mart and down Phillips Avenue.

23. After losing sight of the defendant . . . and Curtis M. Benton, Officer Brown made a u-turn and headed back up

Phillips Avenue toward Kim's Mart.

24. As Officer Brown again approached Kim's Mart, the defendant . . . and Curtis M. Benton were again standing in front of Kim's Mart approximately 20 feet from where Officer Brown saw them originally.

25. Officer Brown pulled into the parking lot at Kim's Mart.

26. As Officer Brown was pulling into the parking lot at Kim's Mart, the defendant . . . and Curtis M. Benton again separated and began walking away in opposite directions.

We conclude that these facts are sufficient, considering the totality of the circumstances, to create reasonable suspicion to justify the initial investigatory stop of defendant.

In making this determination, we are mindful of the dangers identified by defendant in his brief and at oral argument of making the simple act of walking in one's own neighborhood a possible indication of criminal activity. Here, defendant was walking in, and "the stop occurred in[,] a 'high crime area' [which is] among the relevant contextual considerations in a *Terry* analysis." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000) (citation omitted). However, we do not hold that those circumstances, standing alone, suffice to establish the existence of reasonable suspicion. Here, in contrast, the trial court based its conclusion on more than defendant's presence in a high crime and high drug area. The findings of fact show defendant stood at 9:00 p.m. in a specific location known for hand-to-hand drug

transactions that had been the site of many narcotics investigations; defendant and Benton split up and walked in opposite directions upon seeing a marked police vehicle approach; they came back very near to the same location once the patrol car passed; and they walked apart a second time upon seeing Officer Brown's return. We conclude that these facts go beyond an inchoate suspicion or hunch and provide a "particularized and objective basis for suspecting [defendant] of [involvement in] criminal activity." *Navarette*, ___ U.S. at ___, 134 S. Ct. at 1687 (citations and quotation marks omitted). Accordingly, we reverse the Court of Appeals.

## CONCLUSION

In sum, we conclude that the unchallenged findings of fact made by the trial court sufficiently establish that Officer Brown of the Greensboro Police Department had reasonable suspicion to conduct a brief investigatory stop of defendant. Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.