DIETZ, Judge.
 

 *385
 
 This case began when law enforcement discovered an abandoned, burned car with a woman's body inside. Officers arrested Defendant
 
 *386
 
 Jermaine Wilkes and, during questioning after his arrest, Wilkes implicated himself in the woman's murder.
 

 Wilkes later moved to suppress those incriminating statements on the ground that law enforcement lacked probable cause to arrest him. The trial court denied the motion to suppress and Wilkes challenges that denial on appeal.
 

 As explained below, we reject Wilkes's arguments. At the time law enforcement arrested Wilkes, they had already visited the victim's home and found a knife on a chair near a window with a cut screen. Later, when officers questioned the victim's boyfriend, he admitted that he was with Wilkes at the victim's home on the night of the murder and that, after the victim locked the two men out of her house, the boyfriend cut the screen, entered the house through the window, unlocked the front door from the inside, and let Wilkes back in.
 

 These facts and circumstances constituted sufficient, reasonably trustworthy information from which a reasonable officer could believe that Wilkes had committed a breaking and entering. Thus, regardless of whether the officers had probable cause to arrest Wilkes for murder, we agree with the trial court that the officers had probable cause to arrest Wilkes for that lesser crime. Accordingly, we reject Wilkes's arguments and affirm the trial court's judgments.
 

 Facts and Procedural History
 

 Jermaine Wilkes is the cousin of Antoine Reid. On the evening of 6 June 2012, Wilkes and Reid arrived at the home of the victim, Brianne Ginty, to have drinks and to play cards. Reid was Ms. Ginty's boyfriend.
 

 Ms. Ginty and Reid argued throughout the evening and, after one argument, Reid and Wilkes left the house. Once outside, Reid tried to go back in but discovered that Ms. Ginty had locked the door behind them. Reid used a knife and a chair located on the porch to cut out a window screen and pry open a window on the side of the house. He then climbed through the window and opened the front door so Wilkes could enter as well.
 

 Once he was back inside, Reid continued to argue with Ms. Ginty until he finally decided to walk home, leaving Wilkes behind. Wilkes and Ms. Ginty then followed Reid home in Ms. Ginty's car, offering to give Reid a ride home. Reid initially agreed, but when he and Ms. Ginty continued to argue, Reid decided to resume his walk home instead.
 

 Reid got out of the car sometime between 3:00 a.m. and 5:00 a.m. and claims that this was the last time he saw Ms. Ginty alive. Reid's mother told police that Reid arrived home at 6:30 a.m.
 

 *387
 
 Around 8:30 a.m. that morning, witnesses saw smoke coming from a burning car on Hopewell Church Road. Catawba County law enforcement found Ms. Ginty's burned body inside the car.
 

 After officers arrested Reid, and interviewed his mother, they began searching for Wilkes, believing that he was the last person to see Ms. Ginty alive. Reid's mother told law enforcement that Wilkes lived with them on their property and that he was home when the officers arrived to question Reid. She explained that, after the officers arrested Reid, Wilkes walked to the trailer where he lived and locked the doors. After the officers looked for Wilkes and could not find him, Reid's mother informed them that Wilkes was "on the run now."
 

 Reid told law enforcement that he saw Wilkes riding a moped on Hopewell Church Road near where Ms. Ginty's car was found,
 
 *675
 
 around 9:00 a.m. that morning. Another witness also told officers he saw Wilkes on the back of a scooter near Hopewell Church Road that morning.
 

 Later that day, officers located Wilkes, handcuffed him, and took him to the Sheriff's Department where they read him his Miranda rights. Wilkes was not free to leave during this questioning but no one informed Wilkes that he was under arrest. During questioning, Wilkes eventually implicated himself in Ms. Ginty's murder.
 

 The State indicted Wilkes for first degree murder, burning personal property, and concealment of death. Wilkes moved to suppress his statements to the officers at the Sheriff's Department. The trial court denied the motion and Wilkes pleaded guilty to second degree murder and the other remaining charges, while reserving his right to appeal the denial of his motion to suppress. The court sentenced Wilkes to 238 to 298 months in prison for second degree murder and concealment, and a concurrent sentence of 11 to 23 months in prison for burning personal property. Wilkes gave oral notice of appeal from the order denying his motion to suppress.
 

 Analysis
 

 I. Petition for writ of certiorari
 

 As an initial matter, we must address our jurisdiction to hear this appeal. Wilkes concedes that he only appealed the order denying his motion to suppress, not the trial court's judgments. By statute, a criminal defendant seeking review of the denial of a motion to suppress must appeal the judgment of conviction, not merely the suppression order. N.C. Gen. Stat. § 15A-979(b). Because Wilkes failed to appeal from the judgments, this Court lacks jurisdiction over his appeal. Wilkes has therefore petitioned this Court for a writ of certiorari.
 

 *388
 
 Rule 21(a)(1) of the North Carolina Rules of Appellate Procedure authorizes this Court to issue a writ of certiorari when a party loses the right to prosecute an appeal by failing to take timely action. That is what happened here. Because the infirmity in Wilkes's notice of appeal-appealing the suppression order rather than the judgments-is technical in nature, and because the State does not oppose the petition, we exercise our discretion to issue a writ of certiorari and address the merits of Wilkes's appeal.
 

 II. Probable cause to seize and arrest Wilkes
 

 Wilkes argues that the trial court should have granted his motion to suppress because law enforcement lacked probable cause to arrest him. Specifically, Wilkes claims that, when he was taken into custody, the officers only had information tying Reid to the break-in at Ms. Ginty's home. Wilkes further contends that the officers lacked probable cause to believe that Ms. Ginty's car and body were burned intentionally, rather than in an accident. Simply put, Wilkes contends that law enforcement did not have enough information to reasonably believe he had committed any particular crime and thus lacked probable cause to arrest him. As explained below, we reject this argument.
 

 This Court reviews the denial of a motion to suppress to determine whether "competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law."
 
 State v. Jackson
 
 ,
 
 368 N.C. 75
 
 , 78,
 
 772 S.E.2d 847
 
 , 849 (2015). We review the trial court's conclusions of law
 
 de novo
 
 .
 
 State v. Smith
 
 ,
 
 328 N.C. 99
 
 , 114,
 
 400 S.E.2d 712
 
 , 720 (1991).
 

 Law enforcement may make a warrantless arrest of "any person the officer has probable cause to believe has committed a criminal offense." N.C. Gen. Stat. § 15A-401(b) (2009) ;
 
 Beck v. Ohio
 
 ,
 
 379 U.S. 89
 
 , 91,
 
 85 S.Ct. 223
 
 ,
 
 13 L.Ed.2d 142
 
 (1964). Courts look to the totality of the circumstances to determine whether an officer had probable cause to arrest someone.
 
 Illinois v. Gates
 
 ,
 
 462 U.S. 213
 
 , 230-31,
 
 103 S.Ct. 2317
 
 ,
 
 76 L.Ed.2d 527
 
 (1983). The existence of probable cause depends upon whether, at the moment of arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense."
 
 Beck
 
 ,
 
 379 U.S. at 91
 
 ,
 
 85 S.Ct. 223
 
 . The degree of certainty
 
 *676
 
 required for probable cause is a "fair probability," which courts have acknowledged is proof greater than "reasonable suspicion" but less than a "preponderance of the evidence."
 
 State v. Crawford
 
 ,
 
 125 N.C. App. 279
 
 , 282,
 
 480 S.E.2d 422
 
 , 424 (1997).
 
 *389
 
 Here, when officers arrived at Ms. Ginty's home to investigate her suspicious death, they found a cut screen on the outside of a window, and a knife and chair located just below it. Officers then arrested and interrogated Reid, who told officers that Ms. Ginty locked both he
 
 and Wilkes
 
 out of her home and that Reid then broke into Ms. Ginty's home through a window and unlocked the door to let Wilkes back in. This information is sufficient for a prudent person to believe Wilkes committed the crime of breaking and entering.
 
 Beck
 
 ,
 
 379 U.S. at 91
 
 ,
 
 85 S.Ct. 223
 
 .
 

 Wilkes also challenges the reliability of the information forming the basis for probable cause-all of which leaned heavily on statements by Reid. In doing so, Wilkes implies that law enforcement could not claim probable cause to arrest him without first obtaining concrete proof that crimes occurred and that he committed them. But probable cause deals with probabilities, not hard certainties.
 
 United States v. Cortez
 
 ,
 
 449 U.S. 411
 
 , 418,
 
 101 S.Ct. 690
 
 ,
 
 66 L.Ed.2d 621
 
 (1981). These probabilities need not amount to prima facie showings of guilt.
 
 State v. Biber
 
 ,
 
 365 N.C. 162
 
 , 169,
 
 712 S.E.2d 874
 
 , 879 (2011). Here, Reid's statements, in connection with the cut screen and other evidence corroborating his story, were sufficient to raise a fair probability in the officers' minds that Wilkes committed a crime.
 

 To be sure, at the time officers determined there was probable cause to arrest Wilkes for breaking and entering, they also suspected he had committed a far more serious crime-murdering Ms. Ginty and then burning her body inside her car to conceal the offense. But the fact that law enforcement suspected Wilkes committed other, more serious crimes does not prevent the State from arresting Wilkes on charges for which there was probable cause.
 
 See
 

 Devenpeck v. Alford
 
 ,
 
 543 U.S. 146
 
 , 152-53,
 
 125 S.Ct. 588
 
 ,
 
 160 L.Ed.2d 537
 
 (2004). Accordingly, the trial court properly denied Wilkes's motion to suppress.
 

 Conclusion
 

 We affirm the trial court's judgments.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge BERGER concur.