IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-208

 Filed: 7 November 2017

Catawba County, Nos. 12 CRS 53973–74

STATE OF NORTH CAROLINA

 v.

JERMAINE WILKES

 Appeal by defendant from judgments entered 15 August 2016 by Judge Robert

T. Sumner in Catawba County Superior Court. Heard in the Court of Appeals 21

August 2017.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Adren
 L. Harris, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Kathryn L.
 VandenBerg, for defendant.

 DIETZ, Judge.

 This case began when law enforcement discovered an abandoned, burned car

with a woman’s body inside. Officers arrested Defendant Jermaine Wilkes and,

during questioning after his arrest, Wilkes implicated himself in the woman’s

murder.

 Wilkes later moved to suppress those incriminating statements on the ground

that law enforcement lacked probable cause to arrest him. The trial court denied the

motion to suppress and Wilkes challenges that denial on appeal.
 STATE V. WILKES

 Opinion of the Court

 As explained below, we reject Wilkes’s arguments. At the time law enforcement

arrested Wilkes, they had already visited the victim’s home and found a knife on a

chair near a window with a cut screen. Later, when officers questioned the victim’s

boyfriend, he admitted that he was with Wilkes at the victim’s home on the night of

the murder and that, after the victim locked the two men out of her house, the

boyfriend cut the screen, entered the house through the window, unlocked the front

door from the inside, and let Wilkes back in.

 These facts and circumstances constituted sufficient, reasonably trustworthy

information from which a reasonable officer could believe that Wilkes had committed

a breaking and entering. Thus, regardless of whether the officers had probable cause

to arrest Wilkes for murder, we agree with the trial court that the officers had

probable cause to arrest Wilkes for that lesser crime. Accordingly, we reject Wilkes’s

arguments and affirm the trial court’s judgments.

 Facts and Procedural History

 Jermaine Wilkes is the cousin of Antoine Reid. On the evening of 6 June 2012,

Wilkes and Reid arrived at the home of the victim, Brianne Ginty, to have drinks and

to play cards. Reid was Ms. Ginty’s boyfriend.

 Ms. Ginty and Reid argued throughout the evening and, after one argument,

Reid and Wilkes left the house. Once outside, Reid tried to go back in but discovered

that Ms. Ginty had locked the door behind them. Reid used a knife and a chair located

 -2-
 STATE V. WILKES

 Opinion of the Court

on the porch to cut out a window screen and pry open a window on the side of the

house. He then climbed through the window and opened the front door so Wilkes

could enter as well.

 Once he was back inside, Reid continued to argue with Ms. Ginty until he

finally decided to walk home, leaving Wilkes behind. Wilkes and Ms. Ginty then

followed Reid home in Ms. Ginty’s car, offering to give Reid a ride home. Reid initially

agreed, but when he and Ms. Ginty continued to argue, Reid decided to resume his

walk home instead.

 Reid got out of the car sometime between 3:00 a.m. and 5:00 a.m. and claims

that this was the last time he saw Ms. Ginty alive. Reid’s mother told police that Reid

arrived home at 6:30 a.m.

 Around 8:30 a.m. that morning, witnesses saw smoke coming from a burning

car on Hopewell Church Road. Catawba County law enforcement found Ms. Ginty’s

burned body inside the car.

 After officers arrested Reid, and interviewed his mother, they began searching

for Wilkes, believing that he was the last person to see Ms. Ginty alive. Reid’s mother

told law enforcement that Wilkes lived with them on their property and that he was

home when the officers arrived to question Reid. She explained that, after the officers

arrested Reid, Wilkes walked to the trailer where he lived and locked the doors. After

 -3-
 STATE V. WILKES

 Opinion of the Court

the officers looked for Wilkes and could not find him, Reid’s mother informed them

that Wilkes was “on the run now.”

 Reid told law enforcement that he saw Wilkes riding a moped on Hopewell

Church Road near where Ms. Ginty’s car was found, around 9:00 a.m. that morning.

Another witness also told officers he saw Wilkes on the back of a scooter near

Hopewell Church Road that morning.

 Later that day, officers located Wilkes, handcuffed him, and took him to the

Sheriff’s Department where they read him his Miranda rights. Wilkes was not free to

leave during this questioning but no one informed Wilkes that he was under arrest.

During questioning, Wilkes eventually implicated himself in Ms. Ginty’s murder.

 The State indicted Wilkes for first degree murder, burning personal property,

and concealment of death. Wilkes moved to suppress his statements to the officers at

the Sheriff’s Department. The trial court denied the motion and Wilkes pleaded guilty

to second degree murder and the other remaining charges, while reserving his right

to appeal the denial of his motion to suppress. The court sentenced Wilkes to 238 to

298 months in prison for second degree murder and concealment, and a concurrent

sentence of 11 to 23 months in prison for burning personal property. Wilkes gave oral

notice of appeal from the order denying his motion to suppress.

 -4-
 STATE V. WILKES

 Opinion of the Court

 Analysis

 I. Petition for writ of certiorari

 As an initial matter, we must address our jurisdiction to hear this appeal.

Wilkes concedes that he only appealed the order denying his motion to suppress, not

the trial court’s judgments. By statute, a criminal defendant seeking review of the

denial of a motion to suppress must appeal the judgment of conviction, not merely

the suppression order. N.C. Gen. Stat. § 15A-979(b). Because Wilkes failed to appeal

from the judgments, this Court lacks jurisdiction over his appeal. Wilkes has

therefore petitioned this Court for a writ of certiorari.

 Rule 21(a)(1) of the North Carolina Rules of Appellate Procedure authorizes

this Court to issue a writ of certiorari when a party loses the right to prosecute an

appeal by failing to take timely action. That is what happened here. Because the

infirmity in Wilkes’s notice of appeal—appealing the suppression order rather than

the judgments—is technical in nature, and because the State does not oppose the

petition, we exercise our discretion to issue a writ of certiorari and address the merits

of Wilkes's appeal.

II. Probable cause to seize and arrest Wilkes

 Wilkes argues that the trial court should have granted his motion to suppress

because law enforcement lacked probable cause to arrest him. Specifically, Wilkes

claims that, when he was taken into custody, the officers only had information tying

 -5-
 STATE V. WILKES

 Opinion of the Court

Reid to the break-in at Ms. Ginty’s home. Wilkes further contends that the officers

lacked probable cause to believe that Ms. Ginty’s car and body were burned

intentionally, rather than in an accident. Simply put, Wilkes contends that law

enforcement did not have enough information to reasonably believe he had committed

any particular crime and thus lacked probable cause to arrest him. As explained

below, we reject this argument.

 This Court reviews the denial of a motion to suppress to determine whether

“competent evidence supports the trial court's findings of fact and whether the

findings of fact support the conclusions of law.” State v. Jackson, 368 N.C. 75, 78, 772

S.E.2d 847, 849 (2015). We review the trial court’s conclusions of law de novo. State

v. Smith, 328 N.C. 99, 114, 400 S.E.2d 712, 720 (1991).

 Law enforcement may make a warrantless arrest of “any person the officer has

probable cause to believe has committed a criminal offense.” N.C. Gen. Stat. § 15A-

401(b) (2009); Beck v. Ohio, 379 U.S. 89, 91 (1964). Courts look to the totality of the

circumstances to determine whether an officer had probable cause to arrest someone.

Illinois v. Gates, 462 U.S. 213, 230–31 (1983). The existence of probable cause

depends upon whether, at the moment of arrest, “the facts and circumstances within

[the officers’] knowledge and of which they had reasonably trustworthy information

were sufficient to warrant a prudent man in believing that the [suspect] had

committed or was committing an offense.” Beck, 379 U.S. at 91. The degree of

 -6-
 STATE V. WILKES

 Opinion of the Court

certainty required for probable cause is a “fair probability,” which courts have

acknowledged is proof greater than “reasonable suspicion” but less than a

“preponderance of the evidence.” State v. Crawford, 125 N.C. App. 279, 282, 480

S.E.2d 422, 424 (1987).

 Here, when officers arrived at Ms. Ginty’s home to investigate her suspicious

death, they found a cut screen on the outside of a window, and a knife and chair

located just below it. Officers then arrested and interrogated Reid, who told officers

that Ms. Ginty locked both he and Wilkes out of her home and that Reid then broke

into Ms. Ginty’s home through a window and unlocked the door to let Wilkes back in.

This information is sufficient for a prudent person to believe Wilkes committed the

crime of breaking and entering. Beck, 379 U.S. at 91.

 Wilkes also challenges the reliability of the information forming the basis for

probable cause—all of which leaned heavily on statements by Reid. In doing so,

Wilkes implies that law enforcement could not claim probable cause to arrest him

without first obtaining concrete proof that crimes occurred and that he committed

them. But probable cause deals with probabilities, not hard certainties. United States

v. Cortez, 449 U.S. 411, 418 (1981). These probabilities need not amount to prima

facie showings of guilt. State v. Biber, 365 N.C. 162, 169, 712 S.E.2d 874, 879 (2011).

Here, Reid’s statements, in connection with the cut screen and other evidence

 -7-
 STATE V. WILKES

 Opinion of the Court

corroborating his story, were sufficient to raise a fair probability in the officers’ minds

that Wilkes committed a crime.

 To be sure, at the time officers determined there was probable cause to arrest

Wilkes for breaking and entering, they also suspected he had committed a far more

serious crime—murdering Ms. Ginty and then burning her body inside her car to

conceal the offense. But the fact that law enforcement suspected Wilkes committed

other, more serious crimes does not prevent the State from arresting Wilkes on

charges for which there was probable cause. See Devenpeck v. Alford, 543 U.S. 146,

152–53 (2004). Accordingly, the trial court properly denied Wilkes’s motion to

suppress.

 Conclusion

 We affirm the trial court’s judgments.

 AFFIRMED.

 Chief Judge McGEE and Judge BERGER concur.

 -8-