IN THE SUPREME COURT OF NORTH CAROLINA

No. 300PA24

Filed 22 May 2026

STATE OF NORTH CAROLINA

v.

TERREL DAWAYNE ROWDY

On discretionary review pursuant to N.C.G.S. § 7A-31 from the decision of the Court of Appeals, 296 N.C. App. 272 (2024), finding no error in the trial court's judgment entered on 7 June 2023 by Judge Eric C. Morgan in Superior Court, Forsyth County. Heard in the Supreme Court on 9 September 2025.

*Jeff Jackson, Attorney General, by Alan D. McInnes, Special Deputy Attorney General, for the State-appellee.*

*Stephen D. Fuller for defendant-appellant.*

RIGGS, Justice.

This is a companion case to today's decision in *State v. Dobson*, No. 190PA24 (N.C. May 22, 2026), which reiterates that the odor of marijuana is a factor to be considered when analyzing the totality of the circumstances to determine whether an officer had probable cause to conduct a search.

Terrel Rowdy was subject to two searches in connection with a traffic stop: a search of his person and a warrantless search of his automobile. The searches were only proper if officers had reasonable suspicion to conduct the search of Mr. Rowdy's person and probable cause to conduct the warrantless automobile search. The

reasonable suspicion and probable cause analyses examine whether the totality of the circumstances, including the odor of marijuana, justifies a stop, search, or seizure. Under the totality of the circumstances, the search of Mr. Rowdy's person was justified by his refusal to pull over for the traffic stop, his presence in a "high crime area," his prior convictions for narcotics and weapons offenses, the odor of marijuana, and his evasive behavior during questioning. The warrantless search of his automobile was justified by the above factors and the additional discovery of what officers "believed to be a marijuana blunt" during the search of his person. We hold that the search of Mr. Rowdy's person met the reasonable suspicion standard and the warrantless search of his automobile met the probable cause standard, so the trial court did not err in denying his motion to suppress evidence.

## I.  Factual and Procedural Background

On 26 July 2020, Deputy Brandon Baugus witnessed Terrel Rowdy commit a traffic violation and initiated a traffic stop. Mr. Rowdy failed to stop in response to the blue lights and sirens on Deputy Baugus's police vehicle, and instead drove into the parking lot of the West Wall Street Apartments, which Deputy Baugus testified was a high crime and "high narcotic" area. Deputy Baugus followed Mr. Rowdy into the parking lot, where he again activated his siren and Mr. Rowdy again did not stop. Instead, Mr. Rowdy reversed his car as if to back into a parking space and did not stop until Deputy Baugus pulled his police vehicle behind Mr. Rowdy's car.

Once stopped, Deputy Baugus approached Mr. Rowdy's vehicle. Mr. Rowdy,

who was sitting in the driver's seat, rolled down the passenger's side window to hand Deputy Baugus his license and registration. At that point, Deputy Baugus observed a faint odor of marijuana coming from the interior of Mr. Rowdy's car. Deputy Baugus went back to his vehicle and checked whether there were any outstanding warrants for Mr. Rowdy. The check revealed that Mr. Rowdy had prior convictions for narcotics offenses and carrying a concealed gun.

Another officer, Deputy M.D. Mitchell, arrived to assist Deputy Baugus. Deputy Mitchell testified that he also observed a marijuana odor coming from Mr. Rowdy's vehicle. Deputy Baugus asked Mr. Rowdy to step out of his vehicle. Once Mr. Rowdy was out of the car, Deputy Baugus asked him questions about the odor of marijuana. Mr. Rowdy said that he had not been around anyone who smoked marijuana, nor had he smoked it himself, and that he did not have any marijuana.

Mr. Rowdy then began to speak on his cell phone, stopped answering Deputy Baugus's questions, and "bladed" his body away from Deputy Baugus. Deputy Baugus testified that "blading" occurs when a person turns away from the officer towards the inside of their vehicle and indicates that a person is becoming confrontational or attempting to avoid conversation. At that point, Deputy Baugus decided to detain Mr. Rowdy.

While detaining Mr. Rowdy, Deputy Mitchell conducted a frisk to ensure Mr. Rowdy did not have a weapon on his person. During the frisk, Deputy Mitchell found what he "believed to be a marijuana blunt" in Mr. Rowdy's left front pants pocket.

When he retrieved the blunt, Deputy Mitchell informed Mr. Rowdy that it was "marijuana" and Mr. Rowdy did not object or claim that it was legal industrial hemp. While Mr. Rowdy was detained, Deputy Baugus searched Mr. Rowdy's car and found a firearm.

Mr. Rowdy was indicted on charges of carrying a concealed weapon under N.C.G.S. § 14-269(a1), carrying a concealed weapon under N.C.G.S. § 14-269(c), and possession of a stolen firearm under N.C.G.S. § 14-71.1. His trial began on 5 June 2023 in Forsyth County.

Mr. Rowdy filed a motion to suppress evidence obtained as a result of the searches. He argued that, because illegal marijuana is indistinguishable from legal hemp without laboratory testing, "the sight or odor of Cannabis sativa does not indicate with any certainty that the defendant was engaged in, or about to engage in any illegal activity." Because of this, Mr. Rowdy argued the officers did not have probable cause to stop, search, and seize evidence from him. The motion to suppress was heard on the first day of Mr. Rowdy's trial, before jury selection.

At the hearing, Deputy Baugus testified that he was not aware of a difference between marijuana and legal hemp, which he conceded smell and look the same and can only be differentiated by a laboratory test. Nonetheless, he did not perform a field or laboratory test on the blunt found in Mr. Rowdy's pocket. Further, Deputy Mitchell testified to the following: he had received training to identify marijuana, marijuana and legal hemp look and smell similar, the blunt could have been legal

hemp, and the officers did not perform any testing on the blunt.

The trial court denied Mr. Rowdy's motion to suppress because, in addition to the odor of marijuana, several factors gave the officers justification for their actions: (1) Mr. Rowdy's failure to immediately stop and pull over when Deputy Baugus initiated the traffic stop; (2) the fact that, in the experience of Deputies Baugus and Mitchell, the West Wall Street Apartments were a "high crime area"; (3) Mr. Rowdy's prior convictions for narcotics offenses and carrying a concealed gun; and (4) Mr. Rowdy's blading, speaking on the phone during questioning, and refusing to answer questions. The trial court concluded that Mr. Rowdy's constitutional rights were not violated because it found that, based on the totality of the circumstances, the officers had reasonable suspicion to frisk Mr. Rowdy and probable cause to search his vehicle.[1]

On 7 June 2023, the jury found Mr. Rowdy guilty of carrying a concealed gun and not guilty of possession of a stolen firearm. He was sentenced to eight to nineteen months of incarceration, suspended for thirty months of supervised probation. Mr. Rowdy orally entered a notice of appeal in open court.

The Court of Appeals held that the trial court properly denied Mr. Rowdy's motion to suppress evidence and that he received a trial without error. *State v.*

---

[1] Mr. Rowdy objected to the trial court's denial of his motion to suppress at the 5 June 2023 hearing, but he did not renew his objection to the admission of the evidence at trial, so whether the trial court erred by admitting evidence discovered during the searches must be reviewed under the plain error standard. *See* N.C. R. App. P. 10(a)(4).

*Rowdy*, 296 N.C. App. 272, 285 (2024). Judge Arrowood concurred in the outcome but wrote separately to ask this Court to clarify whether the odor of marijuana alone is sufficient to constitute probable cause, given the legalization of industrial hemp. *Id.* at 285–86 (Arrowood, J., concurring).

Mr. Rowdy appealed, seeking this Court's review of the Court of Appeals' opinion. On 19 March 2025, this Court entered a special order allowing discretionary review of what the appropriate legal test is when assessing whether the odor of marijuana gives rise to reasonable suspicion or probable cause of the commission of a crime.

## II.    Standard of Review

Trial court decisions regarding motions to suppress are "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134 (1982). Unchallenged findings of fact are "deemed to be supported by competent evidence and are binding on appeal." *State v. Biber*, 365 N.C. 162, 168 (2011); *see also State v. Watkins*, 337 N.C. 437, 438 (1994). The trial court's conclusions of law are reviewed de novo. *State v. Julius*, 385 N.C. 331, 336 (2023); *see also Biber*, 365 N.C. at 168; *State v. Jackson*, 368 N.C. 75, 78 (2015).

## III.    Analysis

"No right is held more sacred, or is more carefully guarded, . . . than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891)).  Both the Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution protect against unreasonable searches and seizures.  *State v. Otto*, 366 N.C. 134, 136 (2012) (citing U.S. Const. amend. IV; N.C. Const. art. I, § 20).  The "central inquiry under the Fourth Amendment" is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security."  *Terry*, 392 U.S. at 19.

At issue is whether the officers had reasonable suspicion to conduct the search of Mr. Rowdy's person and probable cause to conduct the warrantless search of his automobile.  We hold that, considered under the totality of the circumstances, the officers had reasonable suspicion and probable cause to conduct the searches.

**A. The totality of the circumstances is the proper legal test for assessing whether law enforcement had reasonable suspicion or probable cause of the commission of a crime.**

This case involves both an investigatory *Terry* search and a warrantless search of an automobile. *Terry* searches are subject to the reasonable suspicion standard, *Terry*, 392 U.S. at 30–31, while warrantless searches of automobiles require probable cause, *Collins v. Virginia*, 584 U.S. 586, 592 (2018).  Consistent with our longstanding

approach, we consider the totality of the circumstances in deciding whether law enforcement had reasonable suspicion and probable cause for searches and seizures. *See Watkins*, 337 N.C. at 441; *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (first citing *Illinois v. Gates*, 462 U.S. 213, 232 (1983); and then citing *Brinegar v. United States*, 338 U.S. 160, 175 (1949)); *Florida v. Harris*, 568 U.S. 237, 244 (2013). The odor of marijuana is a factor to be considered under the totality of the circumstances.

When an officer "has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime," an officer may conduct a "reasonable search for weapons for the protection of the police officer." *Terry*, 392 U.S. at 27. An officer is permitted to "conduct a brief investigatory stop of an individual based on reasonable suspicion that the individual is engaged in criminal activity." *Jackson*, 368 N.C. at 77 (citing *Terry*, 392 U.S. at 30–31). In determining whether an officer has reasonable suspicion to conduct an investigatory *Terry* search, courts must consider "the totality of the circumstances—the whole picture." *Watkins*, 337 N.C. at 441 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

The reasonable suspicion required to justify a *Terry* search is a less demanding standard than probable cause or a preponderance of the evidence. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989); *State v. Barnard*, 362 N.C. 244, 247 (2008)). To meet the reasonable suspicion standard, the *Terry* search "must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed

through the eyes of a reasonable, cautious officer, guided by his experience and training." *Watkins*, 337 N.C. at 441–42 (first citing *Terry*, 392 U.S. at 21–22; and then citing *State v. Thompson*, 296 N.C. 703, 706 (1979)). Mere "inchoate and unparticularized suspicion or 'hunch'" is insufficient to meet the reasonable suspicion standard. *Terry*, 392 U.S. at 27; *see also Jackson*, 368 N.C. at 77–78.

Warrantless searches, including of automobiles, require a higher standard than *Terry* searches and are "presumptively unreasonable, though the Court has recognized a few limited exceptions to this general rule." *State v. Terrell*, 372 N.C. 657, 665 (2019) (quoting *United States v. Karo*, 468 U.S. 705, 717 (1984)). The warrantless search of an automobile can be reasonable if the officer has probable cause to search the vehicle. *Collins*, 584 U.S. at 592.

Probable cause does not require "proof of guilt, or even . . . prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith." *State v. Harris*, 279 N.C. 307, 311 (1971) (quoting 5 Am. Jur. 2d *Arrests* § 44 (1962)). Probable cause requires "information of facts which, if submitted to a magistrate, would require the issuance of an arrest warrant." *Id.* (quoting 5 Am. Jur. 2d *Arrests* § 44). The probable cause standard "depends on the totality of the circumstances." *Pringle*, 540 U.S. at 371 (first citing *Gates*, 462 U.S. at 232; and then citing *Brinegar*, 338 U.S. at 175); *see also Harris*, 568 U.S. at 244.

**B. Under the totality of the circumstances, the officers had reasonable suspicion to conduct a *Terry* search.**

In the order denying Mr. Rowdy's motion to suppress, the trial court found that

the officers had reasonable suspicion to conduct a *Terry* search because, "[i]n addition to the odor of marijuana," (1) Mr. Rowdy failed to "immediately heed the blue lights and siren of Baugus and immediately pull over rather than driving into the West Wall Apartment complex"; (2) the apartment complex was a "high crime area"; (3) Deputy Baugus discovered Mr. Rowdy's prior convictions for narcotics offenses and carrying a concealed gun while searching for any outstanding warrants; and (4) Mr. Rowdy bladed away from Deputy Baugus, remained on the phone, and stopped answering questions. These additional factors, when considered in the totality of the circumstances with the odor of marijuana, provided the officers with reasonable suspicion to conduct a *Terry* search.

At the Court of Appeals, Mr. Rowdy challenged four factual findings that the officers smelled or saw marijuana:

> 9. As he received the license and registration from Defendant, Deputy Baugus was only at the window of the Blue Mustang for a very short time, and he observed a faint odor of marijuana coming from the interior of the Blue Mustang.
>
> 16. Deputy Mitchell approached the Defendant, and asked him to roll the window down. While he was speaking to the Defendant, Deputy Mitchell observed a strong odor of marijuana coming from the Blue Mustang.
>
> 22. Defendant was frisked by Deputy Mitchell, and, during that frisk, Deputy Mitchell pulled a "blunt" out of the Defendant's left front pants pocket, and placed it on the spoiler of the Blue Mustang. When Deputy Mitchell pulled the "blunt" out, he informed the Defendant that it was "marijuana." The Defendant did not, at any point, claim that he possessed industrial hemp.

23. The blunt removed from Defendant's pocket appeared to be, in the training and experience of both Deputy Baugus and Deputy Mitchell, a marijuana "blunt."

*Rowdy*, 296 N.C. App. at 276 (emphasis omitted). If challenged factual findings are supported by competent evidence, they are binding on appeal, and appellate courts must determine whether they supported the trial court's conclusions of law. *Cooke*, 306 N.C. at 134. The officers testified that they had experience and training in identifying marijuana and detected what seemed to be the odor of marijuana. Further, both officers testified that Deputy Mitchell found a blunt in Mr. Rowdy's pocket during the search of his person that he "believed to be a marijuana blunt." The officers did not testify that Mr. Rowdy claimed he possessed or used legal hemp. Therefore, the Court of Appeals correctly held that the challenged findings were supported by competent evidence.

Marijuana is a Schedule VI controlled substance, which is illegal to manufacture, sell, deliver, or possess. N.C.G.S. § 90-94(b)(1) (2025); *id.* § 90-95(a), (b)(2) (2025). In 2015, the North Carolina General Assembly legalized industrial hemp by amending N.C.G.S. § 90-87(16), defining marijuana, to add that "marijuana" "does not include industrial hemp." Industrial Hemp Act of 2015, S.L. 2015-299, § 2, 2015 N.C. Sess. Laws 1483, 1486–87. The North Carolina State Bureau of Investigation has written that "[t]here is no easy way for law enforcement to distinguish between industrial hemp and marijuana. There is currently no field test which distinguishes the difference." N.C. State Bureau of Investigation, *Industrial*

*Hemp / CBD*                   *Issues*                        2, https://www.sog.unc.edu/sites/default/files/doc_warehouse/NC%20SBI%20-%20Issues%20with%20Hemp%20and%20CBD%20Full.pdf (last visited May 12, 2026). The SBI further stated that hemp and marijuana are indistinguishable because they "look the same and have the same odor, both unburned and burned." *Id.* Even with the legalization of industrial hemp, the odor of marijuana may still be considered as a factor in the totality of the circumstances inquiry. *See Dobson*, No. 190PA24.

The odor of marijuana is one factor in this case, but it is not the only factor that gave the officers reason to search Mr. Rowdy's person and automobile. Officers must consider the entire situation to determine if they have adequate justification to conduct a search or seizure. We look to the totality of the circumstances when deciding whether law enforcement had reasonable suspicion or probable cause to conduct a search. In addition to the odor of marijuana, the trial court's factual findings related to Mr. Rowdy's failure to stop, presence in a high-crime area, prior convictions, and evasive behavior support that, under the totality of the circumstances, Deputy Mitchell had reasonable suspicion to conduct a *Terry* search.

After committing a traffic violation, Mr. Rowdy "did not immediately stop in response to the blue lights and sirens, but proceeded into the parking lot" of a local apartment complex. Mr. Rowdy continued not to stop once in the parking lot, even after Deputy Baugus activated his siren several times. When a defendant flees or

fails to stop when signaled to do so, it is "not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Wardlow*, 528 U.S. at 124. A defendant's failure to stop when an officer signals can contribute to the totality of the circumstances. *See id.*; *State v. Mitchell*, 358 N.C. 63, 69 (2004).

The apartment complex was "an area with many police calls, and was a high crime area, with numerous reports of narcotics." The fact that the stop occurred in a high-crime area is "among the relevant contextual considerations in a *Terry* analysis." *Wardlow*, 528 U.S. at 124. Even if the location being a "high crime area" is insufficient standing alone to establish reasonable suspicion, *see Jackson*, 368 N.C. at 80; *State v. Johnson*, 378 N.C. 236, 245 (2021), "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation," *Wardlow*, 528 U.S. at 124. This Court has held that a defendant's "presence in a high crime and high drug area" may be considered as one of the factors under the totality of the circumstances test. *See Jackson*, 368 N.C. at 80.

When Deputy Baugus checked whether Mr. Rowdy had any outstanding warrants, he learned that Mr. Rowdy had a prior record of narcotics offenses and a prior conviction for carrying a concealed gun. Mr. Rowdy's criminal record "for which [he] has already paid his debt to society" is not, alone, sufficient to prove reasonable suspicion, but it may be considered under the totality of the circumstances. *See Johnson*, 378 N.C. at 245.

While Deputy Baugus asked him questions about the odor of marijuana, Mr. Rowdy began speaking on his cell phone, refused to answer Deputy Baugus's questions, and bladed away from Deputy Baugus. While individuals have a right to ignore police officers and refuse to cooperate when a police officer approaches them without reasonable suspicion or probable cause, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Wardlow*, 528 U.S. at 124; *see also Florida v. Rodriguez*, 469 U.S. 1, 6 (1984) (per curiam) (reasoning that the defendant's "strange movements in his attempt to evade the officers aroused further justifiable suspicion"). This Court has also considered a defendant's act of blading under the totality of the circumstances when conducting the reasonable suspicion analysis. *See Johnson*, 378 N.C. at 245.

"[W]hen a criminal defendant files a motion to suppress challenging an initial investigatory stop, the trial court can deny that motion only if it concludes, after considering the totality of the circumstances known to the officer, that the officer possessed reasonable suspicion to justify the challenged stop." *Jackson*, 368 N.C. at 78. The reasonable suspicion standard requires "specific, articulable facts indicating present, ongoing criminal activity," not "a mere inchoate suspicion or 'hunch.'" *Id.* at 77–78. Even if some of the above factors are insufficient to prove reasonable suspicion on their own, "we do not assess each of these factors . . . in isolation." *Johnson*, 378 N.C. at 245–46 (citing *Jackson*, 368 N.C. at 80). Instead, "[w]e examine the totality of the circumstances . . . in order to achieve a comprehensive analysis as

to whether the officer's conclusion that defendant may have been armed and dangerous was reasonable." *Id.* at 246. Taken together, the odor of marijuana, Mr. Rowdy's failure to pull over, the location in a "high crime area," Mr. Rowdy's prior convictions for narcotics offenses and carrying a concealed gun, and Mr. Rowdy's evasive behavior when questioned, under the totality of the circumstances, provided reasonable suspicion for the *Terry* search. The trial court did not err in denying Mr. Rowdy's motion to dismiss as to the *Terry* search.

## C. Under the totality of the circumstances, the officers had probable cause to search Mr. Rowdy's car.

Deputy Baugus's search of Mr. Rowdy's vehicle was conducted without a warrant, so it was only reasonable under the Fourth Amendment if he had probable cause. *See Collins*, 584 U.S. at 592 (citing *Carney*, 471 U.S. at 392–93). An officer has probable cause to conduct a search when "the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Harris*, 568 U.S. at 243 (cleaned up). Probable cause requires "the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Id.* at 244 (alteration in original) (quoting *Gates*, 462 U.S. at 231). The probable cause standard "consistently look[s] to the totality of the circumstances." *Id.* (first citing *Pringle*, 540 U.S. at 371; then citing *Gates*, 462 U.S. at 232; and then citing *Brinegar*, 338 U.S. at 176).

When Deputy Mitchell conducted a *Terry* search of Mr. Rowdy's person, he discovered what he "believed to be a marijuana blunt" in his left front pants pocket.

Deputy Mitchell informed Mr. Rowdy that it was "marijuana," and Mr. Rowdy did not claim that it was legal hemp. A person of reasonable caution, when discovering a blunt that he believed to be illegal marijuana, could believe that it was contraband or evidence of a crime, particularly when the defendant does not claim it is legal hemp.

All of the factors that created reasonable suspicion for Deputy Mitchell to conduct a *Terry* search contributed to probable cause for Deputy Baugus to conduct a warrantless search of Mr. Rowdy's automobile. Mr. Rowdy refused to stop in response to police lights and sirens, he parked in a "high crime area," Deputy Baugus discovered his prior convictions for drug and weapons charges, the officers smelled marijuana, and Mr. Rowdy bladed and refused to answer questions. The subsequent discovery of what officers "believed to be a marijuana blunt" only added to the reasonable suspicion the officers had and satisfied the higher probable cause standard.

When considered with the reasonable suspicion factors, the discovery of the blunt gave the officers probable cause to search Mr. Rowdy's car without a warrant. The trial court did not err in denying Mr. Rowdy's motion to suppress as to the warrantless search of his automobile. Because the trial court properly concluded that the officers had reasonable suspicion to conduct a *Terry* search and probable cause to conduct a warrantless search of Mr. Rowdy's automobile, the court did not err in denying Mr. Rowdy's motion to suppress.

## IV.    Conclusion

The trial court properly denied Mr. Rowdy's motion to suppress, and he received a trial without error.  Thus, we modify the Court of Appeals' decision consistent with the rule articulated in this opinion to apply a totality of the circumstances test for probable cause and affirm the Court of Appeals' judgment.

MODIFIED AND AFFIRMED.