DILLON, Judge.
*497 Charles Dione Warren ("Defendant") appeals from the trial court's order denying in part his motion to suppress and from a conviction for felony possession of cocaine and attaining the status of habitual felon. For the following reasons, we affirm the trial court's order.
I. Background
Defendant was indicted for various drug offenses in connection with the discovery of illegal drugs and drug paraphernalia in his car during a traffic stop and for attaining the status of habitual felon. Defendant filed motions to suppress certain evidence collected during warrantless searches by the police.
Prior to trial on the matter, the trial court conducted an evidentiary hearing on Defendant's motions. After the hearing, the trial court entered an order granting Defendant's motion to suppress information retrieved from cell phones seized from Defendant's car but denied his motion as to anything else seized by police.
The case was tried before a jury, and Defendant was found guilty of felonious possession of cocaine and possession of drug paraphernalia. Defendant pleaded guilty to attaining the status of habitual felon. The trial court arrested judgment on the possession of drug paraphernalia conviction and sentenced Defendant as an habitual felon to 38 to 58 months of imprisonment for the felony possession of cocaine conviction. Defendant gave notice of appeal in open court.
II. Analysis
On appeal, Defendant challenges the trial court's partial denial of his motion to suppress certain evidence found during a routine traffic stop. Defendant does not contest the validity of the stop itself. Rather, Defendant contends that the court erred in concluding that the officer had reasonable suspicion to extend the scope and length of time of a routine traffic stop to allow a police dog to perform a drug sniff outside *498 his vehicle, which led to the discovery of contraband in Defendant's vehicle. Specifically, Defendant challenges the trial court's conclusion "[t]hat [the officer] had reasonable articulable suspicion to extend the scope of the initial stop and subject the Defendant's vehicle to the canine search and that the Defendant was not unreasonably detained nor the scope of the initial stop unreasonably extended for the purpose of that canine sniff search."
This Court's review of an appeal from the denial of a defendant's motion to suppress is limited to determining "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." State v. Biber, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011). Unchallenged findings of fact "are deemed to be supported by competent evidence and are binding on appeal. Conclusions of law are reviewed de novo and are subject to full review. Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." Id. at 168, 712 S.E.2d at 878 (marks omitted).
We believe that based on the trial court's unchallenged findings, the officer had reasonable suspicion to extend the routine traffic stop to perform a dog stiff; and, accordingly, we hold that the trial court did not err in partially denying Defendant's motion to suppress.
*365 The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons ... and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "A traffic stop is a seizure even though the purpose of the stop is limited and the resulting detention quite brief." State v. Barnard, 362 N.C. 244, 246, 658 S.E.2d 643, 645 (2008). "[A]n officer may stop a vehicle on the basis of a reasonable, articulable suspicion that criminal activity is afoot." State v. Styles, 362 N.C. 412, 427, 665 S.E.2d 438, 447 (2008).
As the United States Supreme Court recently explained, during the course of a stop for a traffic violation, an officer may-in addition to writing out a traffic citation-perform checks which "serve the same objective as enforcement of the traffic code[.]" Rodriguez v. United States, ---U.S. ----, ----, 135 S.Ct. 1609, 1614-15, 191 L.Ed.2d 492, 499 (2015). These checks typically include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." Id. The Court further held that under the Fourth Amendment an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop, [but] ... he may not do so in a way that prolongs the stop, absent the reasonable suspicion *499 ordinarily demanded" to justify detaining an individual. Id. The Court specifically held that the performance of a dog sniff is not a type of check which is related to an officer's traffic mission. Id. Therefore, under Rodriguez, an officer who lawfully stops a vehicle for a traffic violation but who otherwise does not have reasonable suspicion that any crime is afoot beyond a traffic violation may execute a dog sniff only if the check does not prolong the traffic stop.
We note that prior to Rodriguez, many jurisdictions-including North Carolina-applied a de minimis rule, which allowed police officers to prolong a traffic stop "for a very short period of time" to investigate for other criminal activity unrelated to the traffic stop-for example, to execute a dog sniff-though the officer has no reasonable suspicion of other criminal activity. State v. Sellars, 222 N.C.App. 245, 249-50, 730 S.E.2d 208, 211 (2012). See also State v. Brimmer, 187 N.C.App. 451, 455, 653 S.E.2d 196, 198 (2007). However, the holdings in these cases to the extent that they apply the de minimis rule have been overruled by Rodriguez.
In the present case, it is unclear from the trial court's findings whether the execution of the dog sniff prolonged the traffic stop. Specifically, the trial court found that the officer stopped Defendant for a traffic offense; that the officer called for backup during the stop; that the backup arrived; that the officer performed the dog sniff while his backup completed writing out Defendant's traffic citation; and that the entire stop lasted less than ten minutes. What is unclear is whether the officer's call for backup or waiting for backup to arrive prolonged the stop beyond that which was necessary to complete the traffic stop.
Notwithstanding, unlike in Rodriguez, the trial court's findings support the conclusion that the officer had developed reasonable suspicion of illegal drug activity during the course of his investigation of the traffic offense and was therefore justified to prolong the traffic stop to execute the dog sniff. We note that the State does not need to show that the officer had "probable cause" of illegal drug activity but that he merely had "reasonable suspicion" to extend the stop. See Rodriguez v. United States, --- U.S. at ----, 135 S.Ct. at 1614-15, 191 L.Ed.2d at 499. And as our Supreme Court has pointed out "[r]easonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. Only some minimal level of objective justification is required." Barnard, 362 N.C. at 247, 658 S.E.2d at 645 (marks omitted). In determining whether an officer had a reasonable suspicion of criminal activity, the court must examine both the facts known to the *500 officer at the time he decided to approach the defendant and the rational inferences that may be drawn from those facts. State v. Thompson, 296 N.C. 703, 706, 252 S.E.2d 776, 779 (1979). Also, "the reviewing court must take into account an officer's training *366 and experience." State v. Willis, 125 N.C.App. 537, 541, 481 S.E.2d 407, 410 (1997). In making this determination, "the court must view the totality of the circumstances through the eyes of a reasonable and cautious police officer at the scene." State v. Battle, 109 N.C.App. 367, 370, 427 S.E.2d 156, 158 (1993).
In the context of a traffic stop, a Defendant's proximity to a high crime area alone does not constitute reasonable suspicion; however, a defendant's presence in such area coupled with some sort of evasive behavior may constitute reasonable suspicion. See, e.g., State v. Jackson, 368 N.C. 75, 772 S.E.2d 847 (2015) (holding that officer had reasonable suspicion where the defendant was in a high crime area and took evasive action in the presence of the officer); State v. Willis, 125 N.C.App. 537, 542, 481 S.E.2d 407, 411 (1997) (stating that "when an individual's presence at a suspected drug area is coupled with evasive action, police may form, from those actions, the quantum of reasonable suspicion necessary to conduct an investigatory stop").
In the context of the present case, we note that this Court has held that an officer had reasonable suspicion to detain an individual based on facts similar to those here. Specifically, in In re I.R.T., officers approached a group of individuals, including a juvenile, in an area known for drug activity. 184 N.C.App. 579, 581, 647 S.E.2d 129, 132 (2007). When one officer approached the juvenile, he looked at the officer and quickly turned his head; it appeared to the officer that the juvenile had something in his mouth. Id. The officer explained "that he had previously encountered individuals acting evasive and hiding crack-cocaine in their mouths, and those experiences made him suspect [the juvenile] might be hiding drugs in his mouth." Id. The officer detained the juvenile which eventually led to the discovery of a crack-cocaine rock that was in the juvenile's mouth. Id. On appeal from his adjudication and the denial of his motion to suppress, this Court held that "the juvenile's conduct, his presence in a high crime area, and the police officer's knowledge, experience, and training [was] sufficient to establish" that the officer had a reasonable suspicion to justify an investigatory seizure of the juvenile. Id. at 581-82, 585, 647 S.E.2d at 132-33, 135.
Likewise, here, in support of its conclusion that reasonable suspicion to extend the scope of the stop, the trial court found that Defendant was observed and stopped "in an area [the officer] knew to be a high crime/high drug activity area[;]" that while writing the warning citation, *501 the officer observed that Defendant "appeared to have something in his mouth which he was not chewing and which affected his speech[;]" that "during his six years of experience [the officer] who has specific training in narcotics detection, has made numerous 'drug stops' and has observed individuals attempt to hide drugs in their mouths and ... swallow drugs to destroy evidence[;]" and that during their conversation Defendant denied being involved in drug activity "any longer." We hold that based on the totality of the facts the trial court's unchallenged findings establish the "minimal level of objective justification" to show that the officer had reasonable suspicion to believe that criminal activity was occurring to justify the extension of the traffic stop.[1]
Accordingly, we hold that the trial court did not err in concluding the same and in denying Defendant's motion to suppress.
AFFIRMED.
*367 Judge GEER concurs.
Judge ELMORE dissents in a separate opinion.

The dissenting Judge argues that the officer's reasonable suspicion to justify prolonging the traffic stop cannot be based in this case on the officer's observance of an object in Defendant's mouth. Specifically, the dissenting Judge points out that the present case differs from I.R.T. in that in the present case the officer never asked Defendant about the object in his mouth nor asked Defendant for consent to search his mouth. We recognize that the lack of any evidence that the officer specifically inquired about the object makes the question of whether the officer had reasonable suspicion closer. However, notwithstanding a lack of evidence that the officer inquired about the object in Defendant's mouth, we believe that Defendant's act of speaking with the officer for a period of time without removing or chewing on an object which was affecting his speech-when coupled with the other factors cited above-is sufficient to establish reasonable suspicion.