DAVIS, Judge.
 

 *708
 
 This case presents the question of whether the Fourth Amendment permits law enforcement officers to conduct a knock and talk at the back door of a residence rather than at the clearly visible and unobstructed front door. Kareem Stanley ("Defendant") appeals from his convictions for trafficking in heroin by transportation; trafficking in heroin by possession; possession with intent to manufacture, sell, or deliver a Schedule I controlled substance; possession with intent to sell or deliver a Schedule II controlled substance; and possession of drug paraphernalia. On appeal, he argues that the trial court erred by denying his motion to suppress evidence of the drugs seized from his person as a result of an illegal knock and talk. Because we conclude that (1) the knock and talk was unconstitutional; and (2) the evidence obtained by the officers
 
 *709
 
 would not have been discovered but for the knock and talk, we reverse the trial court's denial of his motion to suppress.
 

 Factual and Procedural Background
 

 In 2015, Investigator Joseph Honeycutt was working for the Special Operations Division of the Durham Police Department. In December 2015, a confidential informant contacted the police department stating that he had purchased heroin from a person at Apartment A at 1013 Simmons Street ("Apartment A") in Durham. The informant
 
 *109
 
 identified James Meager as the person from whom he had bought heroin at Apartment A.
 

 Investigator Honeycutt subsequently became aware that Apartment A belonged to an individual named James Hazelton. Investigator Honeycutt also learned that Meager did not actually live at the apartment.
 

 Nevertheless, Investigator Honeycutt used the informant to conduct controlled drug sales involving Meager at Apartment A on three separate occasions. On 8 December 2015, Investigator Honeycutt observed the informant walk up the driveway to the back door of the apartment in order to purchase heroin from Meager. On 16 December 2015, Investigator Honeycutt once again used the informant to buy heroin from Meager at the back door of Apartment A. Finally, on a third occasion, Investigator Honeycutt observed the informant purchase heroin from the back door of the apartment.
 

 On 1 March 2016, Investigator Honeycutt, Investigator Thomas Thrall, and four to five other members of the Durham Police Department approached Apartment A in order to locate Meager and serve him with a warrant for his arrest. They were dressed in protective vests with the word "Police" written across their chests. The officers did not possess a warrant to search the apartment.
 

 Upon the officers' arrival at the apartment, they immediately walked down the driveway that led to the back of the apartment, and Investigator Honeycutt knocked on the back door. In response to an inquiry from a person inside Apartment A as to who was knocking, Investigator Honeycutt responded: "Joey."
 

 Defendant, who had been staying with Hazelton as a houseguest at Apartment A from January through March of 2016, answered the door, and Investigator Honeycutt "immediately detected ... the odor of marijuana." He stepped into the apartment and began conducting a protective sweep of the premises. One or two other officers also entered
 
 *710
 
 Apartment A to assist him. During the protective sweep, the officers located Hazelton and handcuffed him. A "crack pipe" was discovered on the nightstand in one of the bedrooms of the residence. Investigator Honeycutt also observed a handgun laying on a couch in the living room.
 

 In the meantime, Investigator Thrall waited with several other officers outside the back door. At some point, he directed Defendant to accompany him outside. After Defendant complied with his request, Investigator Thrall told him to take his hands out of his pockets and asked if he was carrying any weapons. Defendant denied possessing any weapons but kept his hands in his pockets. Investigator Thrall asked Defendant a second time to remove his hands from his pockets, and Defendant once again failed to do so.
 

 At that point, Investigator Thrall pulled Defendant's hands out of his pockets, placed them on his head, and informed Defendant that he was going to search him for safety reasons. He then proceeded to conduct a pat-down of Defendant's person. While patting down Defendant's right pants pocket, he felt a bulge. He asked Defendant what was in the pocket, and Defendant responded that it was "some Vaseline." Investigator Thrall then patted down Defendant's left pants pocket and felt a larger bulge. He asked Defendant what was in that pocket, and Defendant replied that it was cocaine.
 

 At that point, Investigator Thrall handcuffed Defendant and reached into Defendant's pockets to retrieve the items contained therein. Inside Defendant's left pants pocket, Investigator Thrall discovered a "plastic baggy that contained some small yellow baggies with a white substance that [he] believed ... to be cocaine." He also found three smaller tan baggies that appeared to contain heroin. Investigator Thrall retrieved a small bag of marijuana from Defendant's right pants pocket.
 

 After Defendant had been searched, Investigator Honeycutt returned to the back door with Hazelton in handcuffs. He informed Investigator Thrall that he was going to obtain a search warrant for the apartment. Investigator Thrall and the other officers then waited outside Apartment A with Hazelton and Defendant, both of whom remained handcuffed. Once a search warrant was obtained, the officers searched the apartment and found a digital scale near the crack pipe on the nightstand.
 

 *110
 
 Defendant was arrested and charged with trafficking in heroin by transportation; trafficking in heroin by possession; possession with intent to manufacture, sell, or deliver a Schedule I controlled substance; possession with intent to sell or deliver a Schedule II controlled substance; and possession of drug paraphernalia. On 10 February 2017,
 
 *711
 
 Defendant filed a motion to suppress all of the evidence that had been seized from his pockets on the ground that the seizure violated his rights under the Fourth Amendment. A hearing was held before the Honorable Beecher R. Gray in Durham County Superior Court on 13 February 2017, and the trial court denied Defendant's motion.
 

 On that same day, Defendant pled guilty to all of the charged offenses but expressly reserved his right to appeal the denial of his motion to suppress. The trial court consolidated all five offenses and sentenced Defendant to a term of 70 to 93 months imprisonment.
 

 Analysis
 

 Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress. Specifically, he argues that the officers violated his Fourth Amendment rights by (1) unlawfully conducting a knock and talk at the back door of Apartment A rather than the front door; (2) entering the apartment without the existence of probable cause and exigent circumstances; and (3) conducting an illegal pat-down search of his person.
 

 "When a motion to suppress is denied, this Court employs a two-part standard of review on appeal: The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law."
 
 State v. Jackson
 
 ,
 
 368 N.C. 75
 
 , 78,
 
 772 S.E.2d 847
 
 , 849 (2015) (citation and quotation marks omitted). "Unchallenged findings of fact are deemed to be supported by competent evidence and are binding on appeal. Conclusions of law are reviewed de novo and are subject to full review."
 
 State v. Warren
 
 ,
 
 242 N.C. App. 496
 
 , 498,
 
 775 S.E.2d 362
 
 , 364 (2015) (internal citations and quotation marks omitted),
 
 aff'd per curiam
 
 ,
 
 368 N.C. 756
 
 ,
 
 782 S.E.2d 509
 
 (2016).
 

 In its written order denying Defendant's motion to suppress, the trial court made the following findings of fact:
 

 1. On March 01, 2016, Investigator Honeycutt and other members of the Special Operations Division of the Durham Police Department conducted a knock and talk at 1013 Simmons Street, Apartment A to locate James Meagher [sic], for whom they had an outstanding arrest warrant and who had been identified by a confidential informant as the person the informant had purchased cocaine from on at least three (3) previous
 
 *712
 
 occasions from the back door of the residence identified as Apartment A, 1013 Simmons Street in Durham, including cocaine purchases on December 08, 2015 and December 16, 2015.
 

 2. Each time the confidential informant purchased narcotics under the surveillance and supervision of the investigators, the confidential informant went to the back door at 1013 Simmons Street, Apartment A. The back door of Apartment A is more hidden from public view than the front door of Apartment A at 1013 Simmons Street.
 

 3. On March 01, 2016, Investigator Honeycutt went directly to the back door of 1013 Simmons Street, Apartment A and knocked, identifying himself as Joey Honeycutt.
 

 4. Kareem Stanley (hereinafter "Defendant") opened the door.
 

 5. As soon as the door was opened, Investigators could smell a strong odor of marijuana coming from inside of the residence. The police officers were wearing vests which had the word "Police" across the front of each vest. No weapons were drawn by police officers at any time during this visit to 1013 Simmons Street, Apartment A.
 

 6. Officer Honeycutt and 1 or 2 other officers entered 1013 Simmons Street, Apartment A and conducted a safety sweep based on the odor of marijuana
 
 *111
 
 and prior drug sales occurring at 1013 Simmons Street, Apartment A. This safety sweep lasted an estimated one to one and one-half minutes in this small duplex apartment. During the safety sweep, Officer Honeycutt and other officers found a single individual identified as James Hazleton [sic], observed in plain view what appeared to be a crack pipe, and observed in plain view a handgun. James Meagher [sic], the object of an outstanding arrest warrant, was not in the apartment. Following the completion of this safety sweep, Officer Honeycutt departed 1013 Simmons Street in order to obtain a search warrant for the Apartment, the individuals found there, and any automobile located there.
 
 *713
 
 7. As officers entered Apartment A to begin the safety sweep, the Defendant stepped out of the 1013 Simmons Street Apartment A, upon request by officer Thomas Thrall.
 

 8. The Defendant had his hands in his pockets and was asked twice by Investigator Thrall to take his hands out of his pockets. Rather than comply with Investigator Thrall's request to remove his hands from his pockets for officer safety, Defendant pushed his hands deeper into his pockets.
 

 9. After the Defendant did not comply with Investigator Thrall's requests[,] Investigator Thrall removed the Defendant's hands from his pockets and placed the Defendant's hands on top of his head, as he had been trained to do.
 

 10. Investigator Thrall verbally notified the Defendant that he was about to conduct a pat down and then conducted a Terry frisk to check whether any kind of weapon was being concealed in the Defendant's pockets that could be used to harm Investigator Thrall or one of the other investigators present.
 

 11. Investigator Thrall patted down on the Defendant's right front pocket and felt a small bulge. The Investigator asked about the bulge in Defendant's right front pocket and the Defendant responded "Vaseline." The bulge on the pat down of Defendant's right front pocket did not feel like Vaseline to Investigator Thrall, but since the item did not feel like a weapon when patted, Investigator Thrall moved on to the Defendant's left side front pocket.
 

 12. Investigator Thrall patted down on the Defendant's left front pocket and felt an even larger bulge. When asked about the larger bulge in his left pocket, the Defendant said "cocaine."
 

 13. After the Defendant told Investigator Thrall the bulge in his left front pocket was cocaine, the Defendant was handcuffed and placed in custody. Defendant was not questioned further, except for his identification, until after Investigator Honeycutt's search warrant
 
 *714
 
 was served on the Defendant at 1220 p.m. on March 01, 2016; he was transported to the Durham Police Department; and given Miranda warnings prior to being interrogated.
 

 Based on these findings of fact, the trial court determined that the officers did not violate Defendant's Fourth Amendment rights by conducting the knock and talk, entering the apartment, or conducting a pat-down search of Defendant's person. Therefore, the court denied Defendant's motion to suppress.
 

 As an initial matter, Defendant challenges the second sentence of Finding No. 2 to the extent it implies that (1) the front door was partially obstructed and not clearly visible from the street; and (2) the back door was not hidden from public view. We agree with Defendant that photographs of the apartment contained in the record on appeal reveal that the front door was, in fact, clearly visible from the street and unobstructed whereas the back door could not be seen.
 

 The remaining pertinent findings of fact made by the trial court are unchallenged and, therefore, binding on appeal.
 
 See
 

 Warren
 
 ,
 
 242 N.C. App. at 498
 
 ,
 
 775 S.E.2d at 364
 
 (holding that unchallenged findings in order denying motion to suppress are deemed to be
 
 *112
 
 supported by competent evidence and binding on appeal).
 

 We first address Defendant's argument that the knock and talk conducted by the officers constituted an unlawful search for purposes of the Fourth Amendment.
 
 [1]
 
 "A 'knock and talk' is a procedure by which police officers approach a residence and knock on the door to question the occupant, often in an attempt to gain consent to search when no probable cause exists to obtain a warrant."
 
 State v. Marrero
 
 , --- N.C. App. ----, ----,
 
 789 S.E.2d 560
 
 , 564 (2016). Our appellate courts "have recognized the right of police officers to conduct knock and talk investigations, so long as they do not rise to the level of Fourth Amendment searches."
 

 Id.
 

 at ----,
 
 789 S.E.2d at 564
 
 .
 

 In
 
 Florida v. Jardines
 
 ,
 
 569 U.S. 1
 
 ,
 
 133 S.Ct. 1409
 
 ,
 
 185 L.Ed.2d 495
 
 (2013), the United States Supreme Court explained the permissible scope of a knock and talk as follows:
 

 *715
 
 [T]he knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds.... This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters. Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do.
 

 Id.
 

 at 8
 
 ,
 
 133 S.Ct. at 1415-16
 
 ,
 
 185 L.Ed.2d at 502
 
 (internal citations, quotation marks, and footnote omitted).
 

 "[I]n North Carolina, law enforcement officers may approach a front door to conduct 'knock and talk' investigations that do not rise to the level of a Fourth Amendment search."
 
 State v. Smith
 
 ,
 
 246 N.C. App. 170
 
 , ----,
 
 783 S.E.2d 504
 
 , 509 (2016) (citation and quotation marks omitted). We recently addressed the legality of a knock and talk conducted at the back door of a residence in
 
 State v. Huddy
 
 , --- N.C. App. ----, ----,
 
 799 S.E.2d 650
 
 , 654 (2017). In
 
 Huddy
 
 , an officer was patrolling an area that he believed to be "at risk of home invasions" and observed a parked vehicle with the car doors open at the end of a long driveway leading to the rear of the defendant's home.
 

 Id.
 

 at ----,
 
 799 S.E.2d at 653
 
 . The officer became suspicious and approached the front door of the house. He observed that the front door of the residence was covered in cobwebs and walked to the back of the residence.
 

 Id.
 

 at ----,
 
 799 S.E.2d at 653
 
 .
 

 The officer entered the backyard and "approached a storm door on the rear porch, which was not visible from the street" in order to conduct a knock and talk.
 

 Id.
 

 at ----,
 
 799 S.E.2d at 653
 
 . As he got closer to the storm door, the officer smelled marijuana. He knocked on the back door and spoke to the defendant, who opened the door. Based on the odor of marijuana at the storm door, the officer later obtained a search warrant for the home. During a search of the residence, the officer ultimately discovered a large quantity of marijuana. The defendant was charged with possession of marijuana with intent to sell or deliver and moved to suppress the evidence seized from the home.
 

 Id.
 

 at ----,
 
 799 S.E.2d at 653
 
 .
 

 On appeal, we held that the defendant's Fourth Amendment rights had been violated. In so ruling, we stated the following:
 

 *716
 
 We begin with the knock and talk doctrine. Because no search of the curtilage occurs when an officer is in a place where the public is allowed to be,
 
 such as at the front door of a house
 
 , officers are permitted to approach the
 
 front
 
 door of a home, knock, and engage in consensual conversation with the occupants.... Put another
 
 *113
 
 way, law enforcement may do what occupants of a home implicitly permit anyone to do, which is approach the home by the
 
 front
 
 path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave.
 

 Importantly, law enforcement may not use a knock and talk as a pretext to search the home's curtilage. No one is impliedly invited to enter the protected premises of the home in order to do nothing but conduct a search.
 
 Likewise, the knock and talk doctrine does not permit law enforcement to approach any exterior door to a home
 
 . An officer's implied right to knock and talk extends only to the entrance of the home that a reasonably respectful citizen unfamiliar with the home would believe is the appropriate door at which to knock.... This limitation is necessary to prevent the knock and talk doctrine from swallowing the core Fourth Amendment protection of a home's curtilage. Without this limitation, law enforcement freely could wander around one's home searching for exterior doors and, in the process, search any area of a home's curtilage without a warrant.
 

 Id.
 

 at ----,
 
 799 S.E.2d at 654
 
 (internal citations, quotation marks, and brackets omitted and emphasis added).
 
 [2]
 

 Huddy
 
 is consistent with prior decisions from this Court in which we have held that knock and talks taking place at a home's back door were unconstitutional.
 
 See, e.g.
 
 ,
 
 State v. Gentile
 
 ,
 
 237 N.C. App. 304
 
 , 310,
 
 766 S.E.2d 349
 
 , 353 (2014) (motion to suppress properly granted where detectives briefly knocked on front door and then attempted knock and talk at back door);
 
 State v. Pasour
 
 ,
 
 223 N.C. App. 175
 
 , 179,
 
 741 S.E.2d 323
 
 , 326 (2012) (trial court erred in denying motion to suppress where officers attempted knock and talk at back door after no one answered knock on front door).
 

 *717
 
 In the present case, the officers knew that Meager did not live at Apartment A but believed that they could either locate him at the apartment or learn more about his whereabouts by conducting a general inquiry of the occupants. Therefore, they elected to utilize a knock and talk. However, in order to pass constitutional muster, the officers were required to conduct the knock and talk by going to the front door, which they did not do. Rather than using the paved walkway that led directly to the unobstructed front door of the apartment, the officers walked along a gravel driveway into the backyard in order to knock on the back door, which was not visible from the street. Such conduct would not have been reasonable for "solicitors, hawkers [or] peddlers...."
 
 See
 

 Jardines
 
 ,
 
 569 U.S. at 8
 
 ,
 
 133 S.Ct. at 1415
 
 ,
 
 185 L.Ed.2d at 502
 
 (citation and quotation marks omitted). Thus, it was also unreasonable for law enforcement officers.
 

 The trial court determined that the officers had an implied license to approach the back door of Apartment A because a confidential informant had been observed purchasing drugs from Meager by utilizing the back door on three separate occasions. However, the fact that the resident of a home may choose to allow certain individuals to use a back or side door does not mean that similar permission is deemed to have been given generally to members of the public. As we made clear in
 
 Huddy
 
 , "[a]n officer's implied right to knock and talk extends only to the entrance of the home that a reasonably respectful citizen
 
 unfamiliar with the home
 
 would believe is the appropriate door at which to knock."
 
 Huddy
 
 , --- N.C. App. at ----,
 
 799 S.E.2d at 654
 
 (citation and quotation marks omitted and emphasis added);
 
 see also
 

 id.
 

 at ----,
 
 799 S.E.2d at 656-57
 
 (Tyson, J., concurring) ("The home's occupants, family, or frequent invitees may use a closer side or back door or a door within a garage to enter the home, rather than walk further to use a front door. Nonetheless, even a seldom-used front door is the door uninvited members of the public are expected to use when they arrive.... Even if the back door was the entrance primarily used by [the defendant] or regular visitors, an uninvited visitor would not necessarily acquire any 'implied license' to also use that door." (internal citation omitted) ).
 

 *114
 
 We recognize that the existence of unusual circumstances in some cases may allow officers to lawfully approach a door of a residence other than the front door in order to conduct a knock and talk.
 
 See, e.g.
 
 ,
 
 State v. Grice
 
 ,
 
 367 N.C. 753
 
 , 754, 761,
 
 767 S.E.2d 312
 
 , 314, 318 (2015) (holding that officers were "implicitly invited into the curtilage to approach the home" where front door was "inaccessible, covered with plastic, and obscured by furniture" and side door "appeared to be used as the main entrance"),
 
 cert. denied
 
 , --- U.S. ----,
 
 135 S.Ct. 2846
 
 ,
 
 192 L.Ed.2d 882
 
 (2015). However,
 
 *718
 
 no such unusual circumstances are presented here. As a result, the knock and talk was unconstitutional.
 

 Finally, it is clear from the record that absent the unlawful knock and talk at Apartment A the officers would not have had any contact at all with Defendant much less had occasion to conduct a pat-down search of his person resulting in the discovery of the drugs in his pockets. Thus, because the knock and talk itself was unlawful the evidence of the drugs seized from him as a result was required to be suppressed.
 
 See
 

 State v. Jackson
 
 ,
 
 199 N.C. App. 236
 
 , 244,
 
 681 S.E.2d 492
 
 , 498 (2009) (holding that drugs "discovered as a direct result of the illegal search ... should have been suppressed as fruit of the poisonous tree").
 

 Therefore, the trial court erred in denying Defendant's motion to suppress. Accordingly, we reverse the trial court's order.
 
 [3]
 

 Conclusion
 

 For the reasons stated above, we reverse the trial court's order denying Defendant's motion to suppress and remand for further proceedings not inconsistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Judges INMAN and MURPHY concur.
 

 [1]
 

 The State does not challenge the fact that Defendant possessed a reasonable expectation of privacy in Apartment A for purposes of the Fourth Amendment based on his status as a houseguest who had been living there for over a month.
 
 See
 

 Minnesota v. Olson
 
 ,
 
 495 U.S. 91
 
 , 96-97,
 
 110 S.Ct. 1684
 
 , 1688,
 
 109 L.Ed.2d 85
 
 , 93 (1990) (holding that defendant's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable").
 

 [2]
 

 We note that the trial court did not have the benefit of our decision in
 
 Huddy
 
 at the time it denied Defendant's motion to suppress as
 
 Huddy
 
 was decided approximately two months later.
 

 [3]
 

 In light of our holding, we need not reach the other arguments raised by Defendant.