IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-681

Filed: 31 December 2020

Harnett County, No. 16CRS053726

STATE OF NORTH CAROLINA

v.

DESHANDRA VACHELLE COBB, Defendant.

Appeal by Defendant from judgment entered 11 February 2019 by Judge Claire

V. Hill in Harnett County Superior Court. Heard in the Court of Appeals 21 January

2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Kindelle McCullen, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S. Hitchcock, for Defendant.*

BROOK, Judge.

Deshandra Vachelle Cobb ("Defendant") appeals from judgment entered upon

plea of guilty to driving while impaired. On appeal, Defendant argues that the trial

court erred in denying her motion to suppress because a checkpoint violated her

Fourth Amendment rights. She also argues that the checkpoint was not conducted

pursuant to the requirements of N.C. Gen. Stat. § 20-16.3A(a)(2a). After careful

review, we vacate the trial court's order and remand for further proceedings

consistent with this opinion.

I. Factual Background and Procedural History

On 28 August 2016 at approximately 12:15 a.m., Defendant approached a checkpoint in Harnett County. As she rolled down her window, a trooper detected a strong odor of alcohol. The trooper asked Defendant if she had had anything to drink, and she replied that she had two Grey Goose shots at the bar. The trooper asked that she step out of the car, noticed that she was unsteady on her feet, and performed field sobriety tests on her. Defendant refused a portable breath test and was placed under arrest for driving while impaired. She subsequently submitted a breath sample indicating that her blood alcohol content was .11. Defendant was charged by citation with one count of driving while impaired and one count of reckless driving.

Defendant initially pleaded guilty in district court on 11 October 2018, and the State dismissed the reckless driving charge that same day; Defendant appealed to superior court on 18 October 2018. On 6 February 2019, Defendant filed a motion to suppress, arguing that the checkpoint was unconstitutional and did not comply with N.C. Gen. Stat. § 20-16.3A. The motion came on for hearing before the Honorable Claire V. Hill in Harnett County Superior Court on 11 February 2019.

At the hearing on the motion to suppress, Sergeant John Bobbitt, a member of the State Highway Patrol ("SHP"), testified about the 28 August 2016 checkpoint. He testified that he supervised the checkpoint, which was conducted pursuant to a written plan in the form of a "HB-14[,]" or a checking station authorization form. The

form indicated that the checkpoint was located at "NC 24" in Harnett County and its purpose was to check for valid driver's licenses and evidence of impairment. Sgt. Bobbitt testified that the troopers operating the checkpoint were in uniform, wearing reflective vests and flashlights, and that at least two vehicles had their blue lights on to indicate that there was a checkpoint ahead.

When asked how the checkpoint's location was chosen, Sgt. Bobbitt testified that

> [i]t's a safe area for that amount of troopers to get out at one time to check driver's licenses. It's an area that . . . needs to be worked more often and we check when we -- it's an area four. It's a rural part of the county. That's just one place that is pretty good for us to get out and . . . a place to put our cars, plus other vehicles; other cars.

He could not recall when he decided to set up the checkpoint, or how much time elapsed between deciding to set up and assembling the checkpoint.

Judge Hill denied Defendant's motion to suppress in open court that same day and by written order on 3 April 2019. The trial court made the following pertinent findings of fact and conclusions of law:

> 4. That on or about August 28, 2016, the SHP was operating a checking station on or about NC 24 at NC 27[,] a public street or highway located in Harnett County, North Carolina.
>
> 5. Sergeant John Bobbitt with the SHP was the supervisor in charge of the above-referenced checking station.
>
> . . .

- 3 -

8. Sgt. Bobbitt completed the HP-14 which is the SHP Checking Station Authorization form.

9. S[gt]. Bobbitt signed as the "authorizing supervisor signature" on the above-referenced form.

10. The above-referenced form complied with the statutory and other regulatory requirements regarding checking stations.

11. S[gt]. Bobbitt testified that this location was not located far from NC 87 and that he chose the location.

12. Checking stations had been previously conducted at this location approximately 4-5 times.

. . .

14. Sgt. Bobbitt did not recall the specific discussion that was had regarding setting up this checking station due to the lapse of time [between Defendant's arrest and the motion to suppress hearing].

15. Sgt. Bobbitt was the supervisor of the checking station and did participate in the checking station. Four other troopers participated in the checkpoint.

16. The public concern addressed with this particular checking station was the public safety in confirming motorists were in compliance and not violating any Chapter 20 Motor Vehicle Violation.

17. This purpose was noted on HP-14 which was admitted into evidence that noted that this was a Standard Checking Station for Chapter 20 enforcement to include, at a minimum, checking each driver stopped for a valid driver's license and evidence of impairment. The time of the operation of the station was 12:15 am to 2:00 am.

18. The checking station as it was operated advanced the public concern and was reasonable.

19. The seizure was short in time for most drivers [ ] since most drivers were stopped for less than one minute.

20. At least two SHP vehicles with blue lights were on at all times during the time that the checking station was authorized.

. . .

23 The participating members were wearing their SHP uniforms with reflective vests and utility flashlights.

24. The checking station could be observed from any direction of approach from one-tenth up to one-half a mile and there was adequate time to observe the checking station and come to a stop when a motorist was traveling at the posted speed limit.

25. The location of this checking station was a short distance to Highway 87 and three county lines making it a major thoroughfare into and out of the county. The road is heavily travelled at times. The location was approximately 7 miles from Lee County line, 10 miles from Moore County line and 10 miles from Cumberland County line.

26. The checking station plan was followed.

27. Traffic did back up some but not extreme and every vehicle that approached this checking station was checked.

28. If drivers had their license and registration the stop lasted one minute or less.

. . . [T]he Court concludes as a matter of law that:

1. The plan was reasonable and the checking station did not violate the Defendant's U.S. or N.C. constitutional rights.

2. The checking station as it was operated advanced the public concern and was reasonable.

3. Enforcement of the motor vehicle laws is a legitimate public purpose and promotes public safety.

4. The short amount of time that the checking station potentially interfered with an individual's liberty was not significant.

On 11 February 2019, Defendant pleaded guilty to driving while impaired, preserving her right to appeal the denial of her motion to suppress. Judge Hill sentenced Defendant to 60 days' imprisonment, suspended upon 12 months of unsupervised probation.

Defendant entered written notice of appeal on 25 February 2019.

## II. Analysis

On appeal, Defendant argues that the trial court erred in denying her motion to suppress. Defendant first argues that the checkpoint violated her Fourth Amendment rights. She further argues that there was no evidence and the trial court made no findings that the checkpoint was conducted pursuant to a written policy, as required by N.C. Gen. Stat. § 20-16.3A(a)(2a).

### A. Standard of Review

Our review of a trial court's denial of a motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "[T]he trial court's unchallenged findings of fact are binding on appeal." *State v. Ramseur*, 226 N.C. App. 363, 366, 739 S.E.2d 599, 602 (2013). "This Court reviews conclusions of law stemming from the denial of a motion to suppress *de novo*. . . . Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Borders*, 236 N.C. App. 149, 157, 762 S.E.2d 490, 498-99 (2014) (citation omitted).

## B. The Checkpoint's Constitutionality

### i. Governing Case Law

The Fourth Amendment to the United States Constitution and Article 1, Section 20 of the North Carolina Constitution protect against unreasonable searches and seizures. U.S. Const. amend. IV; N.C. Const. art. I, § 20. A checkpoint constitutes a seizure and therefore must comply with the Fourth Amendment to pass constitutional muster. *State v. Mitchell*, 358 N.C. 63, 66, 592 S.E.2d 543, 545 (2004). "When considering a challenge to a checkpoint, the reviewing court must undertake

a two-part inquiry to determine whether the checkpoint meets constitutional requirements." *State v. Veazey*, 191 N.C. App. 181, 185, 662 S.E.2d 683, 686 (2008).

"First, the court must determine the primary programmatic purpose of the checkpoint." *Id.* Checking for valid driver's licenses, vehicle registration violations, and evidence of impairment are lawful "primary purpose[s]" for a checkpoint." *Id.*; *see also City of Indianapolis v. Edmond*, 531 U.S. 32, 37, 121 S. Ct. 447, 452, 148 L. Ed. 2d 333, 341 (2000). "However, . . . a checkpoint whose primary purpose is to find any and all criminal violations is unlawful, even if police have secondary objectives related to highway safety." *Veazey*, 191 N.C. App. at 189, 662 S.E.2d at 689.

"Second, if a court finds that police had a legitimate primary programmatic purpose for conducting a checkpoint, . . . the court must judge its reasonableness, hence, its constitutionality, on the basis of the individual circumstances." *Id.* at 185-86, 662 S.E.2d at 686-87 (alterations, citation, and marks omitted).

> To determine whether a checkpoint was reasonable under the Fourth Amendment, a court must weigh the public's interest in the checkpoint against the individual's Fourth Amendment privacy interest. In *Brown v. Texas*, the United States Supreme Court held that when conducting this balancing inquiry, a court must weigh (1) the gravity of the public concerns served by the seizure, (2) the degree to which the seizure advances the public interest, and (3) the severity of the interference with individual liberty. If, on balance, these factors weigh in favor of the public interest, the checkpoint is reasonable and therefore constitutional.

*Id.* at 186, 662 S.E.2d at 687 (internal alterations, citations, and marks omitted) (quoting *Brown v. Texas*, 443 U.S. 47, 51, 99 S. Ct. 2637, 2640, 61 L. Ed. 2d 357, 362 (1979)).

"Under the first *Brown* prong, the trial court [is] required to assess the gravity of the public concerns served by the seizure." *Veazey*, 191 N.C. App. at 191, 662 S.E.2d at 690 (citation and marks omitted). "This factor is addressed by first identifying the primary programmatic purpose [of the checkpoint] and then assessing the importance of the particular stop to the public." *State v. Rose*, 170 N.C. App. 284, 294, 612 S.E.2d 336, 342 (2005) (internal citation omitted). In *State v. McDonald*, 239 N.C. App. 559, 570, 768 S.E.2d 913, 921 (2015), our Court warned against collapsing "the gravity of the public concern" assessment into the "permissible purpose" inquiry, noting "the identification of such a purpose does not exempt the trial court from determining the gravity of the public concern actually furthered under the circumstances surrounding the specific checkpoint being challenged."

Federal and state case law demonstrate how this inquiry should and should not work. On the one hand, in *Illinois v. Lidster*, 540 U.S. 419, 427, 124 S. Ct. 885, 891, 157 L. Ed. 2d 843, 852 (2004), the checkpoint not only had a permissible purpose but also the "relevant public concern was grave[:] . . . to help find the perpetrator of a specific and known crime[.]" On the other hand, in *Veazey* and *McDonald*, this Court held that this first prong was not met when the trial court failed to make any

findings that "*specifically* addresse[d] the strength of the public interest in the *particular checkpoint* at issue[,]" emphasizing that the inquiry is individual-circumstances driven. *Veazey*, 191 N.C. App. at 191, 662 S.E.2d at 690 (emphasis added); *McDonald*, 239 N.C. App. at 570, 768 S.E.2d at 921.

"After assessing the public interest, the trial court [is] required to assess the degree to which the seizure advance[s] the public interest." *Veazey*, 191 N.C. App. at 191, 662 S.E.2d at 690 (citation and marks omitted). In other words, the trial court must "determine whether the police appropriately tailored their checkpoint stops to fit their primary purpose." *State v. Nolan*, 211 N.C. App. 109, 121, 712 S.E.2d 279, 287 (2011) (alterations, citation, and internal marks omitted).

> Our Court has previously identified a number of non-exclusive factors that courts should consider when determining whether a checkpoint is appropriately tailored, including: whether police spontaneously decided to set up the checkpoint on a whim; whether police offered any reason why a particular road or stretch of road was chosen for the checkpoint; whether the checkpoint had a predetermined starting or ending time; and whether police offered any reason why that particular time span was selected.

*Veazey*, 191 N.C. App. at 191, 662 S.E.2d at 690.

In *Veazey*, we held that the "trial court's written findings on the second *Brown* prong raise[d] concerns regarding whether the checkpoint was tailored to achieve its purported objectives" when the only relevant findings were:

4. The checking station was set up in a safe location, however, Trooper Carroll was unaware of any specific problems with unlicensed drivers or motor vehicle law violations at this location.

22. Trooper Carroll testified that he used his training and experience and exercised his discretion regarding: the location of this checking station, when the checking station should start, and how long it should last or when it should end.

*Id.* at 192, 662 S.E.2d at 690 (alterations omitted). We noted the same concerns in *McDonald* when "the trial court's order failed to address (1) why the intersection . . . was chosen for the [c]heckpoint; (2) whether the [c]heckpoint had a predetermined starting or ending time; and (3) whether there was any reason why that particular time span was selected." 239 N.C. App. at 571, 768 S.E.2d at 921.

For the third *Brown* prong, "the trial court [is] required to assess the severity of the interference with individual liberty occasioned by the checkpoint." *Veazey*, 191 N.C. App. at 192, 662 S.E.2d at 690 (internal marks and citation omitted). "[C]ourts have consistently required restrictions to the discretion of the officers conducting the checkpoint to ensure that the intrusion on individual liberty is no greater than is necessary to achieve the checkpoint's objectives." *Id.*, 662 S.E.2d at 691.

Courts have previously identified a number of non-exclusive factors relevant to officer discretion and individual privacy, including: the checkpoint's potential interference with legitimate traffic; whether police took steps to put drivers on notice of an approaching checkpoint; whether the location of the checkpoint was selected by a supervising official, rather than by officers in

the field; whether police stopped every vehicle that passed
through the checkpoint, or stopped vehicles pursuant to a
set pattern; whether drivers could see visible signs of the
officers' authority; whether police operated the checkpoint
pursuant to any oral or written guidelines; whether the
officers were subject to any form of supervision; and
whether the officers received permission from their
supervising officer to conduct the checkpoint. Our Court
has held that these and other factors are not "lynchpins,"
but instead are circumstances to be considered as part of
the totality of the circumstances in examining the
reasonableness of a checkpoint.

*Id.* at 193, 662 S.E.2d at 691 (internal alterations, citations, and marks omitted).

"[I]n order to pass constitutional muster, [ ] orders [on motions to suppress in

the checkpoint context] must contain findings and conclusions sufficient to

demonstrate that the trial court has meaningfully applied the three prongs of the test

articulated in *Brown*." *McDonald*, 239 N.C. App. at 571, 768 S.E.2d at 921. Without

such findings and conclusions, it is impossible to weigh the public interest against

the individual's privacy interest. *See Veazey*, 191 N.C. App. at 186, 662 S.E.2d at 687.

And, when an order fails to contain findings that support the conclusion that the

checkpoint was reasonable, the trial court on remand must "explain why it concluded

that, on balance, the public interest in the checkpoint outweighed the intrusion on

[the d]efendant's protected liberty interests." *Id.* at 194-95, 662 S.E.2d at 692; *see*

*also McDonald*, 239 N.C. App. at 571, 768 S.E.2d at 921 ("[W]e must vacate the trial

court's order and remand so that the trial court can make appropriate findings as to

the reasonableness of the [c]heckpoint under the Fourth Amendment."); *Rose*, 170

N.C. App. at 298-99, 612 S.E.2d at 345 (remanding for further findings where trial court addressed only first prong and part of third prong).

## ii. Application

Defendant concedes and we agree that the trial court correctly determined that the checkpoint had a legitimate primary purpose. The trial court found that the purpose of the checkpoint was to check "each driver stopped for a valid driver's license and evidence of impairment[,]" both of which are lawful programmatic purposes. *See Edmond*, 531 U.S. at 37-38, 121 S. Ct. at 452. However, the trial court did not adequately weigh the three *Brown* factors and thus could not assess whether the public interest in this checkpoint outweighed its infringement on Defendant's Fourth Amendment privacy interests.

As for the first factor, the gravity of the public concern served by the seizure, the trial court failed to make any findings that assessed "the importance of the particular stop to the public." *Rose*, 170 N.C. App. at 294, 612 S.E.2d at 342. The trial court made ample findings as to there being a permissible general purpose for the checking station, finding that

> 16. The public concern addressed with this particular checking station was the public safety in confirming motorists were in compliance and not violating any Chapter 20 Motor Vehicle Violation.
>
> 17. This purpose was noted on HP-14 which was admitted into evidence that noted that this was a Standard Checking Station for Chapter 20 enforcement to include, at a

- 13 -

minimum, checking each driver stopped for a valid driver's license and evidence of impairment.

But these findings and the order more broadly fail to "specifically address[ ] the strength of the public interest in the particular checkpoint at issue." *Veazey*, 191 N.C. App. at 191, 662 S.E.2d at 690. Like in *McDonald*, the trial court focused on "a permissible purpose" to the exclusion of "determining the gravity of the public concern *actually* furthered under the circumstances surrounding the *specific* checkpoint being challenged." 239 N.C. App. at 570, 768 S.E.2d at 921 (emphases added).

With regard to the second prong of the *Brown* test, the degree to which the seizure advanced the public interest, the trial court made the following pertinent findings:

> 11. S[gt]. Bobbitt testified that this location was not located far from NC 87 and that he chose the location.
>
> . . .
>
> 14. Sgt. Bobbitt did not recall the specific discussion that was had regarding setting up this checking station due to the lapse of time [between Defendant's arrest and the motion to suppress hearing].
>
> . . .
>
> 17. . . . The time of the operation of the station was 12:15 am to 2:00 am.
>
> . . .
>
> 25. The location of this checking station was a short distance to Highway 87 and three county lines making it a

> major thoroughfare into and out of the county. The road is heavily travelled at times. The location was approximately 7 miles from Lee County line, 10 miles from Moore County line and 10 miles from Cumberland County line.

Though these written findings address certain factors that this Court has previously noted are relevant to whether the checkpoint was appropriate tailored, the order lacks a consideration of other relevant factors. For instance, the trial court's order does not touch upon whether the checkpoint was set up on a whim or whether it had a "predetermined" start and end time.[1] *Veazey*, 191 N.C. App. at 191, 662 S.E.2d at 690. Moreover, while the trial court found that the checkpoint was set up at a "major thoroughfare" that was "heavily traveled at times[,]" that only partly answers the question of why that location was chosen. *Id.* at 192, 662 S.E.2d at 690 ("[The officer] was unaware of any specific problems with unlicensed drivers or motor vehicle law violations at this location."). And it does nothing to address why that particular time span was chosen. *Id.* at 191, 662 S.E.2d at 690.

Turning to the final *Brown* prong, the severity of the interference with individual liberty, the trial court's findings reflect a thorough consideration of the relevant factors. The trial court identified "a number of non-exclusive factors relevant to officer discretion and individual privacy, including:" that the checkpoint

---

[1] Though the checking station authorization form indicates the time was predetermined, the trial court failed to explicitly find so. *See McDonald*, 239 N.C. App. at 570, 768 S.E.2d at 920-21 ("While it appears that evidence was received at the suppression hearing as to many of the factors that are relevant under the *Brown* test, the trial court's order lacks express findings on a number of these issues.").

minimally interfered with traffic, officers activated their blue lights to put other drivers on notice of the checkpoint, the location was chosen by Sgt. Bobbitt rather than officers in the field, officers stopped every vehicle that passed through the checkpoint, officers wore their uniforms and reflective vests as a visible sign of authority, officers operated the checkpoint pursuant to the written guidelines set forth in HP-14, and Sgt. Bobbitt supervised the checkpoint. *See id.* at 193, 662 S.E.2d at 691.

Despite this, the order reflects "that the trial court has [not] meaningfully applied the three prongs of the test articulated in *Brown*." *McDonald*, 239 N.C. App. at 571, 768 S.E.2d at 921. Though the court addressed the third *Brown* prong, it made no findings regarding the gravity of the public concern (the first prong) and failed to consider all of the circumstances relating to the degree to which the seizure advanced the public interest (the second prong). Given this, as in *Veazey*, the "trial court's written findings tend to weigh in favor of a conclusion that the checkpoint was an unreasonable detention." 191 N.C. App. at 194, 662 S.E.2d at 692. "The trial court therefore was required to explain why it concluded that, on balance, the public interest in the checkpoint outweighed the intrusion on Defendant's protected liberty interests." *Id.* at 194-95, 662 S.E.2d at 692. "Accordingly, we remand for further factual findings . . . and a weighing of [the pertinent] factors to determine whether the checkpoint was reasonable." *Rose*, 170 N.C. App. at 297, 612 S.E.2d at 345.

C. The Checkpoint's Compliance with N.C. Gen. Stat. § 20-16.3A(a)(2a)

Defendant next argues that the trial court erred in finding and concluding that the checkpoint complied with N.C. Gen. Stat. § 20-16.3A(a)(2a)'s written policy requirement. The State argues this was not preserved for our review. We agree with the State.

As a general matter, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). Here, Defendant's motion to suppress argued that "the checkpoint as constituted [ ] did not conform with [N.C. Gen. Stat. § 20-16.3A], et seq. and as such the stop was illegal[.]" Defendant did not pursue this statutory argument at the motion to suppress hearing, however, instead focusing exclusively on her constitutional arguments. More to the point, while mentioning N.C. Gen. Stat. § 20-16.3A generally in her motion, Defendant did not make plain at any point that the thrust of her statutory argument focused on subsection (a)(2a) and its requirement that checkpoints must "[o]perate under a written policy[.]" N.C. Gen. Stat. § 20-16.3A(a)(2a) (2019). As the written policy argument was not specifically "brought to the court's attention," it was not preserved pursuant to the general rule. *State v. Smith*, 267 N.C. App. 364, 368, 832 S.E.2d 921, 925 (2019).

Defendant argues her challenge falls within an exception to the general rule that automatically preserves "whether the judgment is supported . . . by the findings of fact and conclusions of law" if that issue is properly raised in appellant's brief. N.C. R. App. P. 10(a)(1). Defendant rightly notes that trial court's finding of fact 10 is, in part, a legal conclusion that "[t]he [checking station authorization] form complied with the statutory . . . requirement regarding checking stations[,]" *see In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) ("[A]ny determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." (internal citations omitted)), and one that lacks factual support in the order. But, the unsupported conclusion in finding of fact 10, standing alone, cannot change the fact that the order, like the suppression hearing, focused on the previously discussed constitutional issues. At bottom, this is a judgment denying the motion to suppress on constitutional, not statutory (and certainly not written policy), grounds. This case is thus distinguishable from instances where our Court has reviewed issues preserved through this means of automatic preservation. *See, e.g.*, *Anderson Chevrolet/Olds, Inc. v. Higgins*, 57 N.C. App. 650, 653-54, 292 S.E.2d 159, 161 (1982) (challenge to whether findings of intent supported conclusion of contract formation preserved where judgment turned in pertinent part on those issues).

Therefore, Defendant's challenge to the conclusion of law contained in finding of fact 10 is not preserved for our review.

## III. Conclusion

While Defendant's statutory argument is not preserved for our review, her constitutional argument is properly before us. On the strength of that argument and for the reasons stated above, we vacate the trial court's order denying Defendant's motion to suppress and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED.

Chief Judge McGEE concurs.

Judge STROUD dissents by separate opinion.

STROUD, Judge, dissenting.

I respectfully dissent as to the majority's resolution of Defendant's constitutional issue because the trial court's order made findings of fact sufficient to permit appellate review and the trial court correctly addressed "the three prongs of the test articulated in *Brown [v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)]." *State v. McDonald*, 239 N.C. App. 559, 571, 768 S.E.2d 913, 921 (2015). The trial court's findings support the conclusion that the checking station was reasonable. The majority essentially considered all of the issues *de novo*. Using the proper standard of review, I would conclude the trial court did not err by denying Defendant's motion to suppress. However, I agree with the majority that Defendant failed to preserve the issue of the checkpoint's compliance with North Carolina General Statute § 20-16.3A(a)(2a) for review. I would therefore affirm the trial court's order.

Our review of a trial court's denial of a motion to suppress "is strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "Unchallenged findings of fact are deemed to be supported by competent evidence and are binding on appeal. Conclusions of law are reviewed de novo and are subject to full review." *State v. Stanley*, 259 N.C. App. 708, 711, 817 S.E.2d 107, 110 (2018) (quoting *State v.*

*Warren,* 242 N.C. App. 496, 498, 775 S.E.2d 362, 364 (2015), *aff'd per curiam*, 368 N.C. 756, 782 S.E.2d 509 (2016)).

Defendant argues "[t]he trial court erred by denying [Defendant's] motion to suppress because the checkpoint violated [Defendant's] Fourth Amendment rights. The checkpoint was set up on a whim, the discretion of officers conducting the checkpoint was insufficiently limited, and the public interest did not outweigh the intrusion on [Defendant's] privacy[.]" Defendant does not challenge any of the findings of fact as unsupported by the evidence, so they are binding on appeal. *Id.* Instead, Defendant argues the findings were not sufficient to support the trial court's "conclusion that the checkpoint was reasonable" because the findings did not address "the gravity of the public interest served by the checkpoint." Defendant compares this case to *State v. Veazey*, 191 N.C. App. 181, 662 S.E.2d 683 (2008). But *Veazey* is easily distinguished from this case.

In *Veazey*, the trooper testified to several different purposes of the checkpoint, and the trial court announced oral findings but did not enter a written order with findings of fact and conclusions of law until about five months after the notice of appeal.[2] 191 N.C. App. at 184, 662 S.E.2d at 685. This Court determined that the

---

[2] Some of the issues in *Veazey* arose from the differences between the trial court's findings and conclusions as rendered in open court and the written order, entered after defendant had already given notice of appeal. 191 N.C. App. at 184, 662 S.E.2d at 685. "The trial court issued a final written order denying Defendant's motion to suppress on 19 November 2007, more than five months after Defendant's plea and the trial court's entry of judgment. However, in contrast to the trial court's prior

trial court's finding as to purpose was simply a recitation of the Trooper's testimony

and did not resolve the factual issue:

> Given these concerns and the variations in Trooper Carroll's testimony, the trial court was required to make findings regarding the actual primary purpose of the checkpoint and it was required to reach a conclusion regarding whether this purpose was lawful. However, in its 26 February 2007 oral findings, the trial court merely found that "[Trooper Carroll] [s]aid the purpose of the checkpoint was to—for license checks, make sure persons were observing the motor vehicle statutes, State of North Carolina." This finding simply recites two of Trooper Carroll's stated purposes for the checkpoint and is not an independent finding regarding the actual primary purpose. Without such a finding, the trial court could not, and indeed did not, issue a conclusion regarding whether the primary purpose of the checkpoint was lawful. Similarly, the findings in the trial court's 19 November 2007 written order simply recite Trooper Carroll's testimony regarding the checkpoint's purpose. The written order contains no independent finding regarding the primary purpose of the checkpoint, and it contains no conclusion addressing the lawfulness of the primary purpose.

*Id.* at 190-91, 662 S.E.2d 683, 689 (2008) (alteration in original) (citation omitted).

---

oral findings of fact, the trial court's written findings characterized Trooper Carroll's testimony as containing admissions that the checkpoint was a 'generalized checking station,' and that Trooper Carroll had significant discretion regarding the operation of the checkpoint. Despite these findings, however, the trial court concluded:
1. That Trooper Carroll complied with the requirements for conducting a checking station.
2. The evidence obtained need not be suppressed.
The trial court also voided Defendant's prior oral notice of appeal on the ground that it was entered prior to the trial court's entry of a final written order denying Defendant's motion to suppress. Defendant filed a new notice of appeal on 19 November 2007 from the trial court's final written order denying his motion to suppress." *Id.* at 184, 662 S.E.2d at 685.

In this case, the trial court entered a written order with detailed findings of fact addressing the issues raised by Defendant's motion to suppress and argument at the hearing and made the appropriate conclusions of law. Some of the findings were recitations of testimony, such as Finding No. 11, "Sergeant Bobbitt testified that this location was not located far from NC 87 and that he chose the location." But the findings overall are sufficiently detailed that they make the trial court's resolution of the issues clear. This case did not have the discrepancies in the testimony or confusion regarding the order presented in *Veazey*, 191 N.C. App. 181, 662 S.E.2d 683.

At the hearing on the motion to suppress, Defendant acknowledged that the primary purpose of the checking station was lawful: "And step one is the purpose, the primary purpose. And that primary purpose is to check licenses. We don't disagree with they got to the primary purpose, step one." In *Veazey*, this Court noted that checking drivers' licenses is a lawful primary purpose. 191 N.C. App. at 189, 662 S.E.2d at 689 (2008) ("North Carolina Courts have also upheld checkpoints designed to uncover drivers' license and vehicle registration violations." (citing *State v. Mitchell,* 358 N.C. 63, 592 S.E.2d 543 (2004))).

After determining the primary purpose of the checking station is lawful, the trial court is required to follow the three-prong inquiry set out in *Brown v. Texas* 443 U.S. 47, 61 L. Ed. 2d 357 (1979):

> Under the first *Brown* prong, the trial court was required to assess "the gravity of the public concerns served by the seizure." Both the United States Supreme Court as well as our Courts have suggested that "license and registration checkpoints advance an important purpose[.]" The United States Supreme Court has also noted that states have a "vital interest" in ensuring compliance with other types of motor vehicle laws that promote public safety on the roads.

*Veazey,* 191 N.C. App. at 191, 662 S.E.2d at 690 (citations omitted).

As I have already noted, Defendant has not challenged any findings as unsupported by the evidence. Instead, Defendant argues the trial court should have made more findings or more detailed findings. But as long as the trial court's findings address the requirements for the checkpoint adequately to allow appellate review, they are sufficient. The trial court found that the purpose of the checking station was to check for "a valid driver's license and evidence of impairment." The trial court further found this "checking station as it was operated advanced the public concern . . . ." I conclude these findings do take into consideration "the gravity of the public interest served by the checkpoint" and support the conclusion that the checking station was reasonable.

Defendant next argues the "conclusion that the checkpoint was reasonable was unsupported by any findings showing that the checkpoint was appropriately tailored to serve the public interest, particularly where the evidence showed that the checkpoint was set up on a whim." This Court has identified several non-exclusive factors in determining the second Brown prong including:

whether police spontaneously decided to set up the checkpoint on a whim; whether police offered any reason why a particular road or stretch of road was chosen for the checkpoint; whether the checkpoint had a predetermined starting or ending time; and whether police offered any reason why that particular time span was selected.

*Veazey*, 191 N.C. App. at 191, 662 S.E.2d at 690.

Defendant focuses on testimony regarding the decision of the exact location for the checkpoint but overlooks the rest of the evidence. Sgt. Bobbitt testified that the place was chosen based upon traffic, a location near the county line, a clear sight distance, and a safe place for cars to be pulled off the road. The trial court's findings address the factors Sgt. Bobbitt considered, including proximity to main roads and other counties. The checkpoint had a predetermined start and end time. These findings support the trial court's conclusion that the stop was reasonable.

Defendant next argues the "conclusion that the checkpoint was reasonable failed to account for the intrusion on [Defendant's] privacy interest due to the unfettered discretion of officers in the field."

Finally, the trial court was required to assess "the severity of the interference with individual liberty" occasioned by the checkpoint. In general, "'[t]he circumstances surrounding a checkpoint stop and search are far less intrusive than those attending a roving-patrol stop.'" However, courts have consistently required restrictions on the discretion of the officers conducting the checkpoint to ensure that the intrusion on individual liberty is no greater than is necessary to achieve the checkpoint's objectives.

Courts have previously identified a number of non-exclusive factors relevant to officer discretion and individual privacy, including: the checkpoint's potential interference with legitimate traffic; whether police took steps to put drivers on notice of an approaching checkpoint; whether the location of the checkpoint was selected by a supervising official, rather than by officers in the field; whether police stopped every vehicle that passed through the checkpoint, or stopped vehicles pursuant to a set pattern; whether drivers could see visible signs of the officers' authority; whether police operated the checkpoint pursuant to any oral or written guidelines, whether the officers were subject to any form of supervision; and whether the officers received permission from their supervising officer to conduct the checkpoint. Our Court has held that these and other factors are not "'lynchpin[s],' but instead [are] circumstance[s] to be considered as part of the totality of the circumstances in examining the reasonableness of a checkpoint."

*Veazey*, 191 N.C. App. at 192, 662 S.E.2d at 690-91 (alterations in original) (citations omitted).

Here, the trial court made findings on many of the relevant factors identified in *Veazey* including the impact on traffic; that every vehicle approaching the checking station was checked; that the officers were wearing their uniforms with reflective vests and flashlights; that two patrol vehicles had their blue lights on at all times; that the checking station could be seen from either direction of approach and motorists traveling the speed limit had adequate time to stop; that the stop was conducted pursuant to HP-14, a Checking Station Authorization form, which was completed by Sgt. Bobbit, the supervising officer who ordered the checking station

and was present at the checking station; and that the stops lasted one minute or less for drivers who had their licenses with them and no other reason for further investigation. I conclude the trial court did take into account the intrusion on Defendant's privacy interest, and this argument is overruled.

Defendant's final argument is that the trial court erred by concluding that the checking station was reasonable given the insufficient findings on the *Brown* factors and the failure of the trial court to conduct any balancing of those factors. Having rejected Defendant's individual arguments as to reasonableness, I would conclude the trial court made sufficient findings and properly weighed the *Brown* factors.

For the foregoing reasons, I would conclude the trial court did not err in denying Defendant's motion to suppress and must respectfully dissent.