IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-643

Filed 20 June 2023

Henderson County, Nos. 19CRS050883-86

STATE OF NORTH CAROLINA

v.

DAMIAN LEWIS FURTCH

Appeal by Defendant from judgment entered 16 November 2021 by Judge Peter B. Knight in Henderson County Superior Court. Heard in the Court of Appeals 11 April 2023.

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Anne M. Gomez, for Defendant-Appellant.*

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Alexander G. Walton, for the State-Appellee.*

COLLINS, Judge.

Defendant Damian Lewis Furtch appeals from judgment entered upon his guilty plea to two counts of trafficking in methamphetamine; possession with intent to manufacture, sell and/or deliver a Schedule II controlled substance; and maintaining a vehicle used for keeping and selling a controlled substance. Defendant argues that the trial court erred by denying his motion to suppress because the traffic stop was unconstitutionally extended and the narcotics investigation exceeded the scope of the traffic stop. We grant Defendant's petition for writ of certiorari and

affirm the trial court's denial of the motion to suppress.

## I. Background

Detective Jacob Staggs and Detective Josh Hopper with the Henderson County Sheriff's Office were performing drug interdiction on 18 February 2019 as part of the Crimes Suppression Unit. The Crimes Suppression Unit is generally responsible for patrolling high crime areas. Staggs and Hopper's vehicle was positioned facing northbound on U.S. 25 South, "the road that goes from Henderson County into Greenville County toward Travelers Rest."

That night, Staggs had received a "whisper tip" from the Narcotics Unit to be on the lookout for a silver minivan. Shortly before midnight, Staggs spotted a silver minivan following a white pickup truck too closely and got behind the minivan to run its tag through dispatch. While observing the minivan and trying to find a safe place to conduct a traffic stop, the minivan "failed to maintain lane control, kept weaving in its lane, [and] hitting the line[.]"

Staggs initiated the traffic stop and approached the vehicle from the passenger side. Staggs explained to Defendant that he was "kind of weaving" and "kind of . . . following too closely[,]" and asked him for his driver's license. Defendant told Staggs that he was heading to Hendersonville to visit family. When Staggs asked Defendant where his family lived, Defendant told him Black Mountain, "which [was] kind of odd" to Staggs because Black Mountain is not in Hendersonville. While Staggs was

speaking with Defendant, K-9 Deputy Cory Smith with the Henderson County Sheriff's Office arrived on the scene.

After retrieving Defendant's license, Staggs went back to his patrol vehicle, ran Defendant's license through dispatch, and made sure he had no outstanding warrants. Hopper remained standing at the rear of Defendant's vehicle. Staggs confirmed that Defendant had a valid license and no outstanding warrants before writing him a warning citation for following too closely and failing to maintain lane control.

After printing the citation and "highlight[ing] certain things that are important," Staggs exited his patrol vehicle and spoke briefly with Smith. Smith asked Staggs to have Defendant step out of the car for safety while the K-9 conducted the free air sniff.

Staggs then approached Defendant and asked him to exit the vehicle so he could "explain the warning citation[.]" Staggs frisked Defendant for weapons before explaining the warning citation. As Staggs was explaining the citation to Defendant, Smith notified Staggs that the K-9 had alerted on Defendant's vehicle. Staggs finished explaining the citation to Defendant and then explained that they had probable cause to search his vehicle because the K-9 had alerted to narcotics. During the search, the officers discovered an envelope containing 474 grams of methamphetamine.

Defendant was charged with two counts of trafficking in methamphetamine; possession with intent to manufacture, sell and/or deliver a Schedule II controlled substance; and maintaining a vehicle used for keeping and selling a controlled substance. Defendant filed a motion to suppress, which was denied after a hearing on 15 November 2021 by written order entered 24 November 2021. Defendant subsequently pled guilty to the charges and reserved the right to appeal from the denial of his motion to suppress. The trial court sentenced Defendant to 177 to 225 months' imprisonment.

## II. Discussion

### A. Petition for Writ of Certiorari

We first address this Court's jurisdiction to hear Defendant's appeal. "An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty." N.C. Gen. Stat. § 15A-979(b) (2021). To properly appeal the denial of a motion to suppress after a guilty plea, a defendant must: (1) prior to finalization of the guilty plea, provide the trial court and the prosecutor with notice of his intent to appeal the suppression order, and (2) timely and properly appeal from the final judgment. *State v. Jackson*, 249 N.C. App. 642, 645, 791 S.E.2d 505, 508 (2016).

Here, Defendant timely gave notice that he intended to appeal the denial of his motion to suppress, and the reservation of this right was noted in the transcript. Furthermore, Defendant, through trial counsel, announced in open court that he

"would be giving notice of appeal . . . as to the motion to suppress and the [c]ourt's ruling on that motion." However, Defendant failed to appeal, either in open court or in writing, from the trial court's judgment entered upon his guilty plea, as is required by N.C. Gen. Stat. § 15A-979(b). Accordingly, Defendant lost his right to appeal the trial court's order denying his motion to suppress.

Recognizing this failure, Defendant has filed a petition for writ of certiorari. North Carolina Rule of Appellate Procedure 21(a) provides, inter alia, that "[a] writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C. R. App. P. 21(a). "Whether to allow a petition and issue the writ of certiorari is not a matter of right and rests within the discretion of this Court." *State v. Biddix*, 244 N.C. App. 482, 486, 780 S.E.2d 863, 866 (2015) (citation omitted). Here, it is apparent that the trial court and the prosecutor were aware of Defendant's intent to appeal the denial of the motion to suppress prior to the entry of Defendant's guilty plea, and Defendant lost his appeal through no fault of his own. *See State v. Cottrell*, 234 N.C. App. 736, 740, 760 S.E.2d 274, 277 (2014) (granting petition for writ of certiorari where "it is apparent that the State was aware of defendant's intent to appeal the denial of the motion to suppress prior to the entry of defendant's guilty pleas and . . . defendant has lost his appeal through no fault of his own"). Accordingly, we grant Defendant's petition for writ of certiorari and address Defendant's appeal on the merits.

## B. **Motion to Suppress**

"The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citation omitted). "When supported by competent evidence, the trial court's factual findings are conclusive on appeal, even where the evidence might sustain findings to the contrary." *State v. Hall*, 268 N.C. App. 425, 428, 836 S.E.2d 670, 673 (2019) (citation omitted). "Unchallenged findings of fact are binding on appeal." *State v. Fizovic*, 240 N.C. App. 448, 451, 770 S.E.2d 717, 720 (2015) (citation omitted). "We review the trial court's conclusions of law on a motion to suppress de novo." *State v. Ladd*, 246 N.C. App. 295, 298, 782 S.E.2d 397, 400 (2016) (italics and citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quotation marks, italics, and citations omitted).

### 1. *Supporting Affidavit*

As an initial matter, Defendant argues that "[i]f, in this case, defense counsel made a minor procedural error, with respect to the format of his suppression motion–one that was not objected to by the State or noted by the trial court–[Defendant] should still have his claims considered by this Court." (quotation marks and citation omitted).

A motion to suppress "must be accompanied by an affidavit containing facts supporting the motion" and "may be based upon personal knowledge, or upon information and belief, if the source of the information and the basis for the belief are stated." N.C. Gen. Stat. § 15A-977(a) (2021). The trial court may summarily deny a motion to suppress if the motion does not allege a legal basis for the motion, or the affidavit does not support the ground alleged as a matter of law. N.C. Gen. Stat. § 15A-977(c) (2021). While the trial court has the authority to summarily deny a motion to suppress that fails to comply with the required procedural formalities, the trial court also has the discretion to refrain from summarily denying such a motion that lacks an adequate supporting affidavit if it chooses to do so. *State v. O'Connor*, 222 N.C. App. 235, 239-40, 730 S.E.2d 248, 251 (2012).

Here, the affidavit accompanying Defendant's motion to suppress states:

> That upon information and belief and after discussion with the above captioned defendant, review of discovery provided by the State including officer reports and documents produced in connection with this case, review of video evidence provided in discovery, the undersigned attorney has reason to believe that all alleged in the attached Motion to Suppress is accurate and alleged in good faith.

Although the accompanying affidavit did not include facts supporting the motion, the trial court, in its discretion, refrained from summarily denying Defendant's motion to suppress and conducted an evidentiary hearing addressing the merits of the issues raised by Defendant's motion. *Id.* at 241, 730 S.E.2d at 252. The merits of

Defendant's appeal from the trial court's order denying his motion to suppress are therefore properly before this Court.

## 2. *Traffic Stop*

Defendant argues that "Staggs deviated from the mission of the stop and unconstitutionally extended it[.]"

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV. "Article I, Section 20 of the North Carolina Constitution similarly prohibits unreasonable searches and seizures." *State v. Thorpe*, 232 N.C. App. 468, 477, 754 S.E.2d 213, 220 (2014) (citation omitted).

"A traffic stop is a seizure even though the purpose of the stop is limited and the resulting detention quite brief." *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (quotation marks and citation omitted). "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *State v. Williams*, 366 N.C. 110, 116, 726 S.E.2d 161, 166 (2012) (quotation marks and citation omitted). "[T]o detain a driver beyond the scope of the traffic stop, the officer must have the driver's consent or reasonable articulable suspicion that illegal activity is afoot." *Id.* (citation omitted). "An officer has reasonable suspicion if a reasonable, cautious officer, guided by his experience and training, would believe that criminal activity is afoot based on specific and articulable facts, as well as the rational

inferences from those facts." *O'Connor*, 222 N.C. App. at 238, 730 S.E.2d at 250-51 (quotation marks and citations omitted).

"The reasonable duration of a traffic stop, however, includes more than just the time needed to write a ticket. Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop." *State v. Bullock*, 370 N.C. 256, 257, 805 S.E.2d 671, 673 (2017) (quotation marks, brackets, and citations omitted). "Such inquiries may involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *State v. France*, 279 N.C. App. 436, 441, 865 S.E.2d 707, 712 (2021) (quotation marks and citation omitted).

"In addition, an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Bullock*, 370 N.C. at 258, 805 S.E.2d at 673 (quotation marks and citation omitted). "As a precautionary measure to protect the officer's safety, a police officer may as a matter of course order the driver and passengers of a lawfully stopped car to exit his vehicle during a stop for a traffic violation." *State v. Jones*, 264 N.C. App. 225, 231, 825 S.E.2d 260, 265 (2019) (quotation marks and citation omitted). Furthermore, because "'traffic stops remain lawful only so long as unrelated inquires do not *measurably* extend the duration of the stop,' a 'frisk that lasts just a few seconds . . . d[oes] not extend the traffic stop's duration in a way that would require reasonable suspicion.'" *Id.* (quoting *Bullock*,

370 N.C. at 262-63, 805 S.E.2d at 676-77). "[B]ecause officer safety stems from the mission of the traffic stop itself, time devoted to officer safety is time that is reasonably required to complete that mission." *Bullock*, 370 N.C. at 262, 805 S.E.2d at 676.

"[T]he Fourth Amendment permits an officer to conduct an investigation *unrelated* to the reasons for the traffic stop as long as it [does] not lengthen the roadside detention." *France*, 279 N.C. App. at 442, 865 S.E.2d at 712 (quotation marks and citations omitted). Thus, "an officer who lawfully stops a vehicle for a traffic violation but who otherwise does not have reasonable suspicion that any crime is afoot beyond a traffic violation may execute a dog sniff only if the check does not prolong the traffic stop." *State v. Warren*, 242 N.C. App. 496, 499, 775 S.E.2d 362, 365 (2015).

### a. Findings of Fact

Defendant challenges portions of findings of fact 14 and 22.

Finding of fact 14 states:

> The undersigned cannot find as a fact what distance was traveled by Deputy Staggs while he was catching up to the minivan. The traffic at that time was neither "light" nor "heavy." Generally, the vehicle traffic at that time was traveling 65 m.p.h., more or less. Deputy Staggs did not operate his blue lights or his siren, until such time as he had been behind the minivan for sufficient time to observe the minivan weave within its lane again.

Defendant contends that "[b]ecause Staggs testified he was parked at mile marker 3 and the stop occurred at mile marker 8, the trial court's finding that it could not determine what distance Staggs followed the minivan is unsupported." However, the trial court also made the following unchallenged findings of fact:

> 11. . . . Deputy Staggs observed that, in his opinion, the silver minivan was following too closely behind an older model white pickup truck. At the time, Deputy Staggs['] vehicle was parked at about Mile Marker 3. . . .
>
> . . . .
>
> 13. . . . Deputy Staggs departed from his stationary position, and operated his vehicle away from the shoulder of the highway for the purpose of following the silver minivan.
>
> 15. At such time as Deputy Staggs turned on his blue lights (no siren), the minivan promptly moved to the right-hand lane and safely came to a stop along the shoulder. The point of the stop, at about mile marker 8, was about five miles from the location where Deputy Staggs first observed the minivan.

The challenged portion of finding of fact 14, when viewed in conjunction with these findings, indicates that the trial court could not find as a fact the distance Staggs traveled after departing from his stationary position before catching up to the minivan. The trial court's findings of fact that "Deputy Staggs['] vehicle was parked at about Mile Marker 3" and that "[t]he point of the stop, at about mile marker 8, was about five miles from the location where Deputy Staggs first observed the minivan" are supported by competent evidence. When asked at the suppression hearing at what mile marker he was positioned, Staggs testified, "At that point in time I want

to say 3." Furthermore, Staggs testified that "I stopped him around mile marker 8, getting close to Interstate 26 there." However, there is no competent evidence in the record to support any finding as to what distance Staggs traveled after departing from his stationary position before catching up to the minivan. Thus, the trial court did not err by declining to "find as a fact what distance was traveled by Deputy Staggs while he was catching up to the minivan."

Finding of fact 22 states:

> Upon printing of the warning citation, Deputy Staggs got out of his vehicle, approached the Defendant's car from the rear, and asked the Defendant to get out and come around to where the Deputy was. The Defendant complied immediately. The Deputy asked the Defendant whether he had any weapons, to which the Defendant replied that he did not. The Deputy told the Defendant that he was going to perform a quick patdown for weapons; the Defendant promptly complied with the Deputy's requests. The Deputy did so in a matter of not more than about 10 seconds.

Defendant contends that "[t]he trial court's finding that the pat-down 'did not last longer than about 10 seconds' is unsupported to the extent it implies the pat-down did not last longer than 10 seconds in total." The challenged portion of this finding indicates that the trial court found that the pat-down itself, rather than the entire encounter, lasted for about ten seconds. In making this finding, the trial court considered Staggs' dash cam video. Staggs begins his pat down of Defendant at 8:16 of the dash cam video and concludes the pat down at 8:27. Thus, the trial court's

finding of fact that Staggs frisked Defendant for "not more than about 10 seconds" is supported by competent evidence.

Accordingly, the trial court's findings of fact are supported by competent evidence.

b. *Conclusions of Law*

Defendant contends that conclusions of law 8, 13, 15, and 19 are not supported by the trial court's findings of fact.

Conclusion of law 8 states:

> Deputy Staggs['] conversation immediately following the stop of the Defendant's vehicle, was relatively short, and was directly related to the purpose of the stop. The conversation did nothing to change Deputy Staggs' reasonable suspicion that the Defendant's vehicle was following the white pickup truck too closely, and in fact the conversation appeared to confirm that belief.

This conclusion of law is supported by finding of fact 19, which states, in part:

> [Staggs] told the Defendant why he had stopped him – to the effect of you were "kind of following too close." The Defendant agreed, although the undersigned does not take this agreement by the Defendant as an admission, but instead, merely that instead of denying knowledge of such allegation, the Defendant agreed.

Although the trial court did "not take this agreement by Defendant as an admission," the trial court noted that "instead of denying knowledge of such allegation, the Defendant agreed." This finding supports the trial court's conclusion of law that

Staggs' conversation with Defendant "appeared to confirm" that Defendant was following too closely.

Conclusions of law 13, 15, and 19 state:

> 13. Deputy Staggs' explanation of the warning citation after the Defendant was directed to get out of his vehicle took no longer than it would have had the Defendant remained in his vehicle, save for the time required for the brief "pat-down" and the time it took to walk the few steps to the guardrail beside the Deputy Staggs' vehicle. Had Deputy Staggs explained the warning citation to the Defendant while the Defendant remained in the vehicle, he could not have explained the citation and then handed it to the Defendant without being on the highway side of the Defendant's vehicle, in the lane of travel of the highway, thus presenting a safety issue. Deputy Staggs' direction of the Defendant to exit his vehicle for this purpose was lawful.
>
> 15. Deputy Staggs had the authority to direct the Defendant to step out of his vehicle during the stop, to "pat-down" or frisk the Defendant, and to explain the warning citation to the Defendant provided that he did not extend the stop of the Defendant unnecessarily to do so; in fact, the stop was not extended unnecessarily to complete these acts.
>
> 19. The cursory search of the Defendant's vehicle did not extend the stop of the Defendant's vehicle, and was completed prior to the completion of the lawful purposes of the stop.

Staggs initiated the traffic stop after observing a silver minivan following a white pickup truck too closely, "fail[ing] to maintain lane control, . . . weaving in its lane, [and] hitting the line[.]" At that point, Staggs was legally authorized to detain Defendant for "the length of time reasonably necessary to accomplish the mission of

the stop[.]" *Bullock*, 370 N.C. at 257, 805 S.E.2d at 673 (citations omitted). Upon approaching the vehicle, Staggs informed Defendant of the reason for the stop and requested his identification. Staggs then returned to his patrol vehicle to run Defendant's license through dispatch and make sure he had no outstanding warrants. Such inquiries are "ordinary inquiries incident to the traffic stop." *Id.* (quotation marks, brackets, and citation omitted).

Upon writing a warning citation for left of center and following too closely, Staggs asked Defendant to step out of the vehicle to explain the warning citation. Staggs was permitted to order Defendant out of the car as a precautionary measure to protect his safety. *Jones*, 264 N.C. App. at 231, 825 S.E.2d at 265. Likewise, Staggs' pat down of Defendant did not measurably extend the duration of the traffic stop in a way that would require reasonable suspicion. *Bullock*, 370 N.C. at 263, 805 S.E.2d at 677 ("So this very brief frisk did not extend the traffic stop's duration in a way that would require reasonable suspicion."). Although unrelated to the mission of the traffic stop, the K-9 free air sniff did not prolong the stop because it took place while Staggs was explaining the ticket to Defendant. *Warren*, 242 N.C. App. at 498-99, 775 S.E.2d at 365.

At no point during the traffic stop did any of the officers' actions "convert the encounter into something other than a lawful seizure[.]" *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). For the entirety of the traffic stop, Staggs was either "'diligently pursu[ing] the investigation[,]' conducting 'ordinary inquiries incident to [the traffic]

- 15 -

stop[,]' or taking necessary 'precautions in order to complete [his] mission safely.'" *France*, 279 N.C. App. at 444, 865 S.E.2d at 714 (quoting *Rodriguez v. United States*, 575 U.S. 348, 354-56 (2015)). Although the K-9 free air sniff was unrelated to the reasons for the traffic stop, it did not prolong the traffic stop and was therefore permissible. *Id.*

Accordingly, the trial court did not err by denying Defendant's motion to suppress.

### III. Conclusion

As the trial court's findings of fact are supported by competent evidence and the trial court's findings of fact support its conclusions of law, the trial court did not err by denying Defendant's motion to suppress. Accordingly, we grant Defendant's petition for writ of certiorari and affirm the trial court's denial of Defendant's motion to suppress.

AFFIRMED.

Chief Judge STROUD and Judge FLOOD concur.